**Reginald C. STEWARD, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 03–CF–1124, 06–CO–393.**

District of Columbia Court of Appeals.

Submitted May 10, 2007.
Decided June 21, 2007.

---

Walter S. Booth, Bethesda, MD, appointed by the court, was on the brief for appellant.

Jeffrey A. Taylor, United States Attorney, Roy McLeese III, Lisa Schertler, Lionel Andre and Youli Lee, Assistant United States Attorneys, were on the brief for the appellee.

Before KRAMER and THOMPSON, Associate Judges, and PRYOR, Senior Judge.

THOMPSON, Associate Judge:

In the first of these consolidated cases, appellant Reginald Steward seeks reversal of his conviction on a single count of distribution of heroin, arguing insufficiency of the evidence. In the second case, he contends that the trial court erred in denying, without a hearing, his motion, brought pursuant to D.C.Code § 23–110 and Super. Ct. Crim. R. 33, in which he alleged ineffective assistance of counsel and sought a new trial. We have no trouble concluding that the evidence at trial was sufficient to sustain the jury's guilty verdict. We agree with appellant, however, that the court erred in summarily dismissing his section 23–110 motion without affording him a hearing (or, at least, an opportunity to supplement his motion before the court determined whether to hold a hearing). We therefore vacate the order denying the section 23–110 motion and remand the case to the trial court for further proceedings consistent with this opinion.

## I.

■ The evidence at trial was that Metropolitan Police Department Investigator Clarence Brooks and other police officers were running an undercover buy/bust operation on August 20, 2002, in the 4100 block of Wheeler Road, S.E.[1] That evening, Brooks approached an individual who later, upon his arrest, gave his name to police as James Taylor, but who subsequently was confirmed to be Bobby Praylow.[2] Brooks asked Praylow for two dime bags (*i.e.*, two ten-dollar bags of drugs). Praylow told Brooks to follow him to a parking lot.

Praylow then walked over to a fence while Investigator Brooks stood approximately fifteen to twenty feet away. A woman and two or three men, including appellant, were standing near the fence. Investigator Brooks testified that at the fence, Praylow had a short conversation with appellant, during which Brooks heard the word "two." Thereafter, appellant walked a few feet away, bent down, and retrieved some small objects from a grassy area. Appellant then walked to Praylow and handed him two green ziplocs of white powder. Praylow took the ziplocs, walked back to Brooks, and handed him the two ziplocs in exchange for $20 in pre-recorded police funds.

Investigator Brooks returned to his car and radioed a lookout description for both Praylow and appellant, describing appellant as a "a heavyset Black male wearing a

---

1. We review sufficiency of the evidence claims "in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences from fact." *Gibson v. United States*, 792 A.2d 1059, 1065 (D.C.2002) (internal citation, quotation and punctuation omitted).

2. Praylow was appellant's co-defendant. Like appellant, he was indicted for unlawful distribution of heroin. Praylow pled guilty to unlawful distribution of heroin in a separate case and the government dismissed the charge in this case as part of a plea agreement.

white T-shirt [and] blue jean shorts."[3] Officer James Tyler received the lookout and drove to the rear of 4100 Wheeler Road. Officer Tyler saw a man, appellant, matching the radioed description, pulled up beside him, and stopped him. After Investigator Brooks positively identified appellant as the man who had supplied drugs to Praylow, Officer Tyler placed appellant under arrest. Police searched appellant and recovered fourteen dollars on his person. Police officers also searched the grassy area from where appellant had retrieved the small objects that he gave to Praylow, but did not recover anything. Officer Brooks testified that he was a "hundred percent" sure that appellant was the individual that he saw retrieving objects from the grass and providing them to Praylow.

The defense called as witnesses three women, including Carol Foster, Deborah Pride, and appellant's mother. Foster and Pride both testified that they had been standing and chatting with appellant and others in the area behind the 4100 block of Wheeler Road for about forty-five minutes on the evening in question and that appellant was continuously in their line of vision. None saw appellant go over to the fence line.

On the second day of trial, one of the jurors sent the judge a note asking, among other things, "how many [other people who were arrested during the police operation] resembled the defendant, either in physical appearance or dress?" and "Did other officers have the defendant under direct surveillance, from the time of the transaction to his arrest?" The court responded that it "does not permit questions to be asked by the Jury during the trial." The jury began deliberations at 9:30 a.m. the next day. At 2:25 p.m., the jury sent the court a note saying that it could not reach a verdict. Court reconvened at 2:31 p.m., and the trial judge instructed the jury to resume its deliberations. The jury requested a fifteen-minute break, and then at 4:00 p.m., sent the judge a note saying that it had reached its verdict.

Appellant was sentenced on August 1, 2003, and noted his direct appeal on August 28, 2003. On April 21, 2004, appellant filed his "Motion Pursuant to DC Code § 23–110 and Motion for a New Trial," to which were attached two affidavits of his own and an affidavit of Bobby Praylow. The motion alleged, *inter alia*, that appellant's trial counsel had provided ineffective assistance by failing to properly investigate appellant's assertions regarding his co-defendant Praylow and Praylow's "desire to exculpate him," and that there was "newly discovered information, obtained from the juvenile Co–Defendant, regarding his part in the crimes as charged, and potential exculpatory testimony regarding [appellant's role] in these matters." Appellant stated in his affidavit dated March 10, 2004, that "[a]t no time did my attorney ... talk to my co-defendant, Bobby Praylow or his defense counsel" or "suggest to have Bobby Praylow come and testify at my trial that he was the person who sold the drugs to the undercover policeman." Appellant stated in his affidavit dated April 1, 2004, that he asked his trial counsel to "talk with Bobby Praylow and interview him in regard to what part he played in the offense I was charged with," and that he did "not know if [trial counsel] had any conversations or interviews with Bobby Praylow or his attorney." Praylow stated in his affidavit dated February 3, 2004, that he "was never contacted" by

---

3. Officer Randall Parker, who was acting as the "eyes" of the police operation had also seen appellant, wearing a white T-shirt and blue jeans, standing among the men who were at the fence line.

appellant's counsel and that he "never received any drugs or money from [appellant] on August 20, 2002, before I was arrested, or after I was arrested on August 20, 2002." Praylow also stated that he "was willing to testify in court on [appellant's] behalf and testify to the fact that I was the person who sold two bags of heroin to the undercover police officer on August 20, 2002...."

On January 9, 2006, the trial court ordered the government to respond to appellant's motion. On March 10, 2006, before any government response was filed and without a hearing, the court denied appellant's motion. The court explained:

> I cannot reasonably conclude that it is more probable that but for trial counsel's failure to introduce the testimony of co-defendant Bobby Praylow (Taylor), which was a strategic choice, the outcome of the trial would have been different.... Trial counsel's strategic choice of not introducing the testimony of co-defendant Praylow (Taylor), who was arrested in the same offense, in no way prejudiced the defendant's case. Given the overwhelming evidence against the defendant and the co-defendant, it is this Court's belief that trial counsel's strategic choice was made after thorough investigation of law and facts relevant to plausible options.

This court consolidated appellant's direct appeal and his appeal from denial of his 23–110/new trial motion.

## II.

■ Appellant argues that there was insufficient evidence to find him guilty of distribution of heroin,[4] asserting that Investigator Brooks did not have direct contact with appellant, that Brooks "could not possibly" see what was exchanged between appellant and Praylow, that no other witnesses saw a drug transaction, and that the officers did not find a stash or the marked money on appellant. We need not pause long over this claim. It is of no consequence that no other witnesses saw the drug transaction, as it is well-established in our case law that " 'the testimony of a single witness is sufficient to sustain a criminal conviction, even when other witnesses may testify to the contrary.' " *Freeman v. United States*, 912 A.2d 1213, 1220 (D.C.2006) (quoting *Gibson*, 792 A.2d at 1066). The testimony of Investigator Brooks provided sufficient evidence for conviction. Brooks testified that nothing obstructed his view and that he was able to see appellant hand Praylow "two green zips with white powder" (which Praylow brought straight to Brooks and Brooks field tested for heroin). Appellant's act of transferring the two zips to Praylow was sufficient to prove distribution. *See Bullock v. United States*, 709 A.2d 87, 90 (D.C. 1998) (the delivery of drugs between two members of a drug enterprise is considered distribution (citing *Long v. United States*, 623 A.2d 1144, 1147 (D.C.1993) and cases cited therein)). The fact that police found no additional drugs and no money on appellant when he was arrested does not negate the evidence against him, as there was testimony from a police expert that drug dealers often do not hold the proceeds of drug dealing on their persons and since, for example, it is possible that appellant sold this last of his inventory to

---

4. As appellant acknowledges, his trial counsel did not preserve this argument for appeal by filing a motion for judgment of acquittal; as a result, we review only for plain error. *See Newby v. United States*, 797 A.2d 1233, 1238 n. 2 (D.C.2002). This means we will uphold the appellant's conviction unless we find "manifest error" or "serious injustice." *Fields v. United States*, 484 A.2d 570, 575 (D.C.1984) (citing *Richardson v. United States*, 276 A.2d 237, 238 (D.C.1971)). We find no such error or injustice here.

Brooks. Finally, to the extent that appellant's contention is that Brooks was too far away to actually see the "two green zips with white powder" exchange between the appellant and Praylow, the dispositive answer is that we give "full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact...." *Curry v. United States,* 520 A.2d 255, 263 (D.C.1987) (citations omitted).

### III.

 The more difficult issue is with respect to one aspect of appellant's appeal from denial of his section 23–110 motion. To prevail on his section 23–110 motion, appellant was required to show both that his trial counsel's performance was constitutionally deficient and that he was prejudiced thereby. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

 "When a defendant in a § 23–110 motion raises a claim of ineffective assistance of counsel, there is a presumption that the trial court should conduct a hearing." *Jones v. United States,* 918 A.2d 389, 402–03 (D.C.2007) (citations omitted). This presumption "is even stronger when the claim of ineffectiveness is based on facts that are not already disclosed in the record." *Lane v. United States,* 737 A.2d 541, 548 (D.C.1999) (citation omitted). No hearing is required,

however, "where defendant's motion consists of (1) vague and conclusory allegations, (2) palpably incredible claims, or (3) allegations that would merit no relief even if true." *Lopez v. United States,* 801 A.2d 39, 42 (D.C.2002) (internal citation and quotation omitted). Although "we review the trial judge's denial, without a hearing, of appellant's motion pursuant to D.C.Code § 23–110, for abuse of discretion," *Alston v. United States,* 838 A.2d 320, 324 (D.C. 2003), "we must be satisfied that under no circumstances could the petitioner establish facts warranting relief." *Hilliard v. United States,* 879 A.2d 669, 671 (D.C. 2005) (citation and quotation omitted). If there is any question regarding the appropriateness of a hearing, we resolve it in favor of holding a hearing. *Newman v. United States,* 705 A.2d 246, 261 (D.C. 1997).

 Given the standards that appellant was required to meet to prevail on his section 23–110 motion and to be entitled to a hearing, we have no trouble affirming the trial court's rejection, without a hearing, on most of the grounds that appellant cited in purported support. Appellant asserted in his motion that his trial counsel met with him only six or seven times for five to ten minutes at a time, the sole exception being one twenty-minute interview.[5] He did not suggest, however, what additional trial preparation could have been done if trial counsel had met with him longer or what topics of conversation could have been covered that were not. In short, he failed to identify any prejudice from his counsel's conduct. Without such information, appellant's mo-

---

**5.** Appellant contends in addition that his trial counsel's failure to move for a judgment of acquittal at the close of the evidence amounted to deficient performance (an argument that appellant did not raise in his section 23–110 motion). For the reasons already dis-

cussed, such a motion would have lacked merit. Counsel cannot be found unconstitutionally deficient for failing to bring a meritless motion. *See Washington v. United States,* 689 A.2d 568, 572 (D.C.1997).

tion was vague and conclusory and did not entitle him to a hearing.

■ As to appellant's allegation that his trial counsel "failed to properly advise [him] regarding acceptance of a plea offer" and his argument that he was talked out of taking a plea that would have included drug rehabilitation,[6] we note that appellant's affidavits told the trial court little more than that he (appellant) was "thinking about taking a Plea of Guilty" and that his trial counsel presented some reasons why trial would be a better option.[7] There was no suggestion in appellant's affidavits that trial counsel somehow "forced" appellant to go to trial. The affidavits gave the trial court no reason for concluding other than that trial counsel's evaluation of the weaknesses of the government's case was reasonable professional assistance, and that the advice that trial counsel gave appellant was just that: advice.

Appellant also argued that his trial counsel did not file any pretrial motions such as a motion to suppress evidence or a motion to suppress identification. However, there was no evidence recovered from appellant to suppress, and appellant provided no factual basis for questioning the circumstances of Investigator Brooks' identification of him. Thus, these vague and conclusory allegations also did not entitle appellant to a hearing.

■ The same cannot be said of appellant's allegations that his trial counsel was ineffective in failing to interview Praylow or to investigate the possibility of calling him as a witness at trial to provide potentially exculpatory testimony.[8] It is quite possible, as the trial court found, that trial counsel's action in not calling Praylow as a defense witness at trial was a "strategic choice ... made after thorough investigation of law and facts relevant to plausible options." But we are unable to discern how, without hearing from trial counsel, the court reached the conclusion that not calling Praylow to testify reflected a strategy decision rather than a negligent omission or counsel's failure to communicate with his client. Not having responded at all to appellant's motion, the government did not submit any evidence refuting appellant's allegation that his trial counsel ignored his request that counsel interview Praylow.

We also fail to see how the trial court could conclude that "not introducing the testimony of co-defendant Praylow ... in no way prejudiced the defendant's case." To be sure, as the government argues, Praylow was "mired in credibility issues." The record informs us that he gave a false name to police at the time of his arrest and that he was indicted in two heroin distribution cases, and he may have little to lose if

---

**6.** There is no evidence of any such plea on the record.

**7.** These include the fact that the police did not recover any pre-recorded funds from appellant during a search incident to arrest and the fact that a sentence for attempted distribution of heroin (which was the offered plea) is the same as the sentence for distribution of heroin (the offense for which appellant was indicted).

**8.** We have recognized that the "failure of trial counsel to investigate properly a case, to interview exculpatory witnesses, and to present

their testimony constitutes constitutional ineffectiveness." *Lopez,* 801 A.2d at 46 (internal quotation and citation omitted). Thus, appellant met his burden of "alleg[ing] facts which, if demonstrated, would establish ineffective assistance of counsel." *Johnson v. United States,* 385 A.2d 742, 744 (D.C.1978). Had he failed to do so, we would not even need to address the prejudice point discussed *infra. See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 (there is no need for the court "even to address both components of the inquiry if the defendant makes an insufficient showing on one").

he were to testify falsely as to appellant's non-involvement in heroin distribution on the evening of August 20, 2002.[9] Nevertheless, if credited, Praylow's sworn statement that he "never received drugs or money" from appellant on August 20 would have been exculpatory as to appellant. As we said in *Jones,* "where the exculpatory value of the evidence proffered by appellant turns at bottom on the credibility of the witnesses specifically identified in the § 23–110 motion and whose proposed testimony was evidenced by signed statements, we can discern no grounds for negating the credibility of those witnesses merely on the basis of their written statements." 918 A.2d at 403 (citation and quotation omitted). "To do so assumes the answer to the very question which an evidentiary hearing could illuminate." *Id.* (citation and internal quotation omitted).

The trial court explained its ruling by referring to what it called the "overwhelming" evidence against appellant. The court noted that not only was Investigator Brooks' testimony sufficient to convict appellant (a point with which we have already agreed), but also "Officer Randall Parker, who observed the entire transaction, provided corroborating testimony of the defendant's guilt." However, Officer Parker testified that while he saw Praylow "walk over to another group of male subjects, ... I couldn't actually see, you know, what they was doing. I couldn't see the hand-to-hand transaction or anything." In other words, while Officer Parker did cor- roborate Investigator Brooks' testimony that there was a man wearing a white T-shirt and blue jeans standing among the men who were at the fence, he did not corroborate Investigator Brooks' testimony as to appellant's role in the drug sale.[10]

Nor, in our judgment, was the evidence against appellant actually overwhelming. For that conclusion we rely principally on the fact, evidenced by the questions that one juror submitted to the judge on April 16, that the jury had questions about whether someone else might have been dressed in clothing similar to appellant's and whether police had kept a steady eye on appellant before his arrest; and the fact that the jury initially could not reach a unanimous verdict after almost five hours of deliberation. We faced a similar situation in *Long v. United States,* 910 A.2d 298, 306–09 (D.C.2006), where, without a hearing, the trial court had denied a section 23–110 motion on the ground that, even if true, the proffered testimony of an alibi witness would not have overcome the strength of the government's case. We vacated the court's ruling and remanded for a hearing on the motion. We conclude that a similar result is appropriate here.

As the government's brief notes, Praylow's affidavit did not state that he would actually testify that he "never received drugs or money" from appellant on August 20. By contrast, he *did* state that he would have been willing to testify that he

---

9. Also, appellant's assertion in his affidavit, that he was "thinking about taking a Plea of Guilty," might affect the credence to be given to any exculpatory testimony that Praylow might present.

10. Moreover, even though Investigator Brooks professed one hundred percent certainty as to his identification of appellant, "it is well recognized that the most positive eyewitness is not necessarily the most reliable." *Webster v. United States,* 623 A.2d 1198, 1204 n. 15 (D.C.1993) (quotation marks and citation omitted); *see also In re As.H.,* 851 A.2d 456, 459–60 (D.C.2004) ("The vagaries of eyewitness identification, and the potential for wrongful convictions or adjudications based upon such evidence, have long been recognized in the District of Columbia.") (citing *United States v. Telfaire,* 152 U.S.App. D.C. 146, 149–51, 469 F.2d 552, 555–57 (1972) (per curiam)).

"was the person who sold two bags of heroin to the undercover police officer on August 20, 2002" (a statement that added nothing to the evidence presented at trial). The different approaches that Praylow took in these two sentences of his affidavit may well not be inadvertent, and cannot be ignored. They may be a signal that, upon a hearing, appellant will not be able to persuade the trial court that he was prejudiced by his counsel's decision (or omission) in not calling Praylow to testify. As the government also points out, Praylow's affidavit does not explain who else might have been involved in the drug sale, and appellant's affidavits do not make clear whether his counsel actually failed to interview Praylow or simply failed to inform appellant that he did so. All of this is to say that appellant's burden at a hearing would be a substantial one. Indeed, we think it may be appropriate for the trial court, before determining whether to set a hearing date, to afford appellant an opportunity to supplement his motion. *Cf. Jones,* 918 A.2d at 408 ("[I]n cases where, as here, contradictions and other impediments in 'the motion and files and records of the case' present credibility problems if unresolved, providing the appellant with an opportunity to supplement his initial motion with affidavits explaining those obstacles to credibility could be a prudent course of action.") (discussing and citing *Metts v. United States,* 877 A.2d 113 (D.C. 2005)).

■ Still, we cannot say that appellant's claims are entirely "vague and conclusory" or "palpably incredible," or that "under no circumstances could [appellant]

establish facts warranting relief." Nor, on this record, could the trial court fairly conclude that there was no "reasonable probability" that, if the jury had heard Praylow's testimony, they would have found appellant not guilty.[11] Because appellant made "a colorable claim which, if true, would provide a basis for relief, the trial court should not [have] decide[d] the matter summarily." *Jones,* 918 A.2d at 408; *see also* D.C.Code § 23–110(c) (requiring a hearing "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.").

For the foregoing reason, we affirm appellant's conviction, but we vacate the order denying his section 23–110 motion, and remand the case for further proceedings consistent with this opinion.

---

11. We do not disturb the trial court's denial of appellant's motion to the extent that it was a denial of the motion for a new trial pursuant to Super. Ct. Crim. R. 33. The standard that appellant had to meet under Rule 33 required, *inter alia,* a showing that the new evidence he proffered was "of such nature that in a new trial it would probably produce an acquittal." *Payne v. United States,* 697 A.2d 1229, 1234 (D.C.1997). We agree with the government that appellant's motion and accompanying affidavits did not satisfy that standard.