David CORMIER, et al.,
Appellants/Cross–
Appellees,

v.

DISTRICT OF COLUMBIA WATER
AND SEWER AUTHORITY,
Appellee/Cross–Appellant.

Nos. 06–CV–1370, 06–CV–1371.

District of Columbia Court of Appeals.

Argued March 5, 2008.

Reissued Oct. 30, 2008.*

---

* By separate unpublished order of this date, this court has recalled the mandate and withdrawn its original opinion in this case, which was issued on April 18, 2008. *Cormier v. District of Columbia Water and Sewer Auth.,* 946 A.2d 340 (D.C.2008) (*Cormier I* ). The present (revised) opinion is substantially identical to *Cormier I,* except that the court has added new footnote 3 and has made minor conforming changes.

Peter T. Enslein, with whom Patrick Guilfoyle was on the brief for appellants/cross-appellees.

Nat N. Polito, Washington, with whom Benjamin F. Wilson and Avis M. Russell were on the briefs, for appellee/cross-appellant.

Vytas V. Vergeer, Washington, Rebecca Lindhurst, Barbara McDowell, Eric Angel, and Peter G. Wilson filed a brief on behalf of Bread for the City Legal Clinic and Legal Aid Society of the District of Columbia, amici curiae. This brief was filed in response to the Order to Show Cause issued by this court on June 27, 2008.

Before RUIZ and GLICKMAN, Associate Judges, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

David Cormier, who owns eight residential properties in northwest Washington, D.C., brought this action alleging negligence, product liability, breach of contract and seven other claims. He alleged that over a period of many years, the District of Columbia Water and Sewer Authority (WASA) has delivered corrosive water to his properties, thereby causing pinhole leaks in, and damaging, the pipes and other plastic fixtures in his buildings. Cormier asked the court to award compensatory and punitive damages, as well as injunctive and declaratory relief.

Following extensive discovery, WASA filed a motion for summary judgment. On June 12, 2006, the trial judge ruled, *inter alia*, that Cormier had not produced sufficient evidence of his damages, and he granted partial summary judgment in favor of WASA and denied Cormier's claim for damages with respect to all of Cormier's properties. The judge denied WASA's motion for summary judgment with respect to Cormier's request for injunctive and declaratory relief.

Cormier then moved to dismiss, without prejudice, his claims for injunctive and declaratory relief, and he requested that final judgment be entered. On October 26, 2006, the trial judge granted Cormier's motion. The judge dismissed without prejudice Cormier's request for an injunction and for a declaratory judgment, and he entered final judgment in favor of WASA.

Cormier filed a timely appeal from the final judgment entered against him. WASA cross-appealed, and now contends that the trial judge erred in declining to dismiss Cormier's claims for equitable and declaratory relief with prejudice.

We reverse the award of summary judgment to WASA as to Cormier's request for monetary damages, although we sustain the judge's ruling that certain of Cormier's claims are time-barred. We affirm the order dismissing Cormier's claim for equitable relief without prejudice. Concluding that Cormier's request for declaratory relief is patently lacking in merit, we direct that the trial judge dismiss that claim with prejudice.

## I.

## BACKGROUND

It is undisputed that during the period at issue in this action, WASA provided water to all eight of Cormier's residential buildings. WASA purchased finished water (*i.e.*, water that is ready for consumption) from Washington Aqueduct (a non-party to this litigation). WASA then delivered that water to the properties in question.

On July 15, 1998, Cormier wrote a brief letter to WASA in which he challenged the water bill for his property at 1460 Euclid Street, N.W. He asserted in this letter that "[c]hemicals in the water are attacking my water pipes and plastic parts in faucets and toilets, resulting in water leaks and excessive water usage." According to Cormier, WASA took no corrective action in response to his complaint. On January 1, 2000, Cormier wrote a second letter, and he reiterated the claims that he had made eighteen months earlier. On February 2, 2000, Cormier wrote to WASA again, this time in relation to his building at 1300 Harvard Street, N.W. In this letter, Cormier reported that "poor water quality" was damaging the water and sewer systems in the building.

On February 21, 2003, more than three years after he sent WASA the last of his three letters, Cormier filed a ten-count complaint seeking, *inter alia*, compensatory and punitive damages and injunctive and declaratory relief. Cormier alleged that

defendants [1] have failed to monitor copper levels in plaintiffs' [sic] drinking water, to test the source water for corrosiveness, or to timely remediate the corrosivity problem in its water. As a consequence, defendants for years have supplied plaintiffs [sic] with drinking water that is excessively corrosive. It has pitted and corroded plaintiffs' [sic] water pipes, raised levels of copper in their drinking water to potentially unsafe and hazardous levels, and caused staining of their fixtures and appliances. Further, plaintiffs' [sic] fixtures been permanently damaged, and they [sic] have suffered loss in the value of their [sic] property.

To support the allegations in his complaint, Cormier secured the services of Dr. Marc Edwards, a professor of civil and

---

1. In fact, WASA is the only named defendant, and Cormier is the sole plaintiff. The use of the plural for both parties was apparently inadvertent.

environmental engineering at Virginia Polytechnic Institute. As noted by the trial judge,

> Dr. Edwards' activities, which span the course of two years, fall into one of four categories: (1) examining tap water from the properties; (2) extracting pipe samples for study; (3) inspecting loose pipe samples that Cormier gave to him; and (4) on-site inspection of pipe samples. This forensic evidence forms the heart of Cormier's claims for relief.

Dr. Edwards reported the results of his analysis in letters to Cormier's attorneys dated May 2, 2003 and January 29, 2005.

Dr. Edwards testified extensively on deposition, and he made a number of statements which are claimed by WASA to be favorable to its defense. He acknowledged, for example, that he had no knowledge as to the period of time during which certain chemicals were at an unacceptable level in the water supplied to Cormier's properties by WASA. Dr. Edwards also disclaimed any expertise in, or knowledge of, the amount of Cormier's damages. Relying heavily on what it regarded as statements by Dr. Edwards favorable to its cause, WASA filed a motion for summary judgment seeking dismissal of Cormier's claims with prejudice. In response, Cormier presented a Declaration by Dr. Edwards "under penalty of perjury" in which Dr. Edwards elaborated on his deposition testimony and made assertions more favorable to Cormier. The Declaration was not notarized.

On June 12, 2006, the trial judge issued a 17–page written order in which he granted partial summary judgment in favor of WASA as to all of Cormier's claims for monetary damages. The judge concluded that the evidence of damages was too speculative to raise a genuine issue of material fact. The judge further held that the proof of negligence was insufficient because, *inter alia,* Dr. Edwards' Declaration was not an "affidavit" within the meaning of Super. Ct. Civ. R. 56(e), and that therefore the Declaration could not be considered. The judge also concluded that as to the two properties regarding which Cormier had written to WASA, namely, 1480 Euclid Street, N.W. and 1300 Harvard Street, N.W., Cormier's claims were time-barred[2] to the extent that they were based on events that occurred before February 21, 2000.

The judge subsequently granted Cormier's motion to dismiss without prejudice Cormier's claims for injunctive and declaratory relief. Final judgment in WASA's favor was entered accordingly, and Cormier's appeal and WASA's cross-appeal followed.

## II.

## CORMIER'S APPEAL

A. *Summary judgment standard.*

▆▆▆ The question whether summary judgment was properly granted is one of law, and we review the trial judge's order *de novo. Allman v. Snyder,* 888 A.2d 1161, 1165 (D.C.2005); *Abdullah v. Roach,* 668 A.2d 801, 804 (D.C.1995). In *Colbert v. Georgetown Univ.,* 641 A.2d 469 (D.C. 1994) (en banc), the full court described the applicable standard as follows:

> In order to be entitled to summary judgment, [the moving party] must demon-

---

**2.** The judge explained that

> [u]nder D.C. law, the limitations period for property damage and breach of contract is three years. D.C.Code §§ 12–301(3), (7). The limitations period for actions "for

which a limitation is not otherwise specially prescribed" is also three years. *Id.* § 12–301(8). Thus, the limitations period for all claims in this suit is three years.

strate that there is no genuine issue of material fact and that [it is] entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c); *Clyburn v. 1411 K Street Limited Partnership,* 628 A.2d 1015, 1017 (D.C.1993). The record is viewed in the light most favorable to the party opposing the motion. *Graff v. Malawer,* 592 A.2d 1038, 1040 (D.C. 1991). On appeal, we must assess the record independently, but the substantive standard applied is the same as that utilized by the trial court. *Northbrook Ins. Co. v. United Servs. Auto Ass'n,* 626 A.2d 915, 917 (D.C.1993).

*Id.* at 472. "Accordingly, if an impartial trier of fact, crediting the non-moving party's evidence, and viewing the record in the light most favorable to the non-moving party, may reasonably find in favor of that party, then the motion for summary judgment must be denied." *Weakley v. Burnham Corp.,* 871 A.2d 1167, 1173 (D.C.2005). If, however, the summary judgment record "demonstrates that, construing all of the facts and inferences to be drawn therefrom in favor of the party against whom the judgment is entered, he would not be entitled to have a jury verdict stand, we have not hesitated to hold that the grant of summary judgment is proper." *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980) (quoting *Time, Inc. v. McLaney,* 406 F.2d 565, 571–72 (5th Cir.), *cert. denied,* 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239 (1969)); *see also Hendel v. World Plan Exec. Council,* 705 A.2d 656, 660 (D.C.1997) (quoting *Nader* ).

We now apply the foregoing standard in examining the grounds upon which the trial judge relied to grant partial summary judgment in favor of WASA.

B. *The Edwards Declaration.*

■ In his opposition to WASA's motion for summary judgment, Cormier filed a "Declaration" by his expert, Dr. Edwards. The Declaration was not notarized, but it concluded with the following statement:

> I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

Dr. Edwards' Declaration filled in alleged deficiencies in the support provided for Cormier's case by Dr. Edwards' deposition testimony. As the judge pointed out in his June 12, 2006 order, the parties stipulated that only a qualified expert could identify pinhole leaks in copper pipes. The judge continued:

> WASA asserts that Dr. Edwards' deposition testimony reveals that he has no opinion about whether pinhole leaking occurred as to at least five of the eight properties in question. WASA points to testimony from Dr. Edwards' deposition, at which the following exchange occurred:
>
> Q. But as to five of the eight [properties at issue] you do not believe you have a reasonable degree of scientific certainty to conclude that there is copper pinhole leak pitting?
>
> A. Yes.
>
> Edwards Dep., July 21, 2005, at 74. This exchange occurred after WASA's counsel and Dr. Edwards discussed his inspection of leaks at 1300 Harvard Street, 2920 Ontario Road, and 1909 19th Street. *Id.*
>
> Cormier's rebuttal to this evidence is a document in which Dr. Edwards purportedly declared that based on his water testing, "there is a high probability that copper pipes present at the other properties would have pinhole leaks."
>
> The judge ruled, however, that he

need not even decide whether this rebuttal is sufficient to create an issue of fact to survive summary judgment, because the court finds that the Edwards Declaration is not an affidavit.

According to Black's Law Dictionary, an affidavit is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public." Black's Law Dictionary 22 (2d pocket ed.2001). The Edwards Declaration appears to be signed and sworn, but has not been notarized. Thus, it is not an affidavit and cannot be considered part of the record in connection with resolution of a summary judgment motion under SCR Civ. Rule 56(e).

The judge concluded that WASA was entitled to partial summary judgment as to those properties regarding which Dr. Edwards had admitted lack of knowledge at his deposition.

We do not agree with the judge's ruling on this issue. Under analogous federal statutory law, the Declaration was sufficient. 28 U.S.C. § 1746 provides:

> Whenever, under any law of the United States, or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or

an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

■■■ The foregoing provision governs Rule 56 of the Federal Rules of Civil Procedure, see, e.g., *Pollock v. Pollock*, 154 F.3d 601, 612 n. 20 (6th Cir.1998); *Burgess v. Moore*, 39 F.3d 216, 217 (8th Cir.1994), and although this court has not heretofore decided the precise question presented here, we think that Super. Ct. Civ. R. 56 should be construed consistently with its federal counterpart. The apposite language in Dr. Edwards' Declaration is substantially identical to that prescribed in 28 U.S.C. § 1746(2).[3]

---

**3.** 28 U.S.C. § 1746 expressly eliminates all notarization requirements "under any law of the United States or under any rule, regulation, order or requirement made pursuant to law." We agree with *amici* that Super Ct. Civ. R. 56 is such a rule. This is so because it is the same rule that was promulgated by Congress in 1934 as F.R. Civ. P. 56. *See* Rules Enabling Act of 1934, Pub.L. No. 73–415, 48 Stat. 1064, now codified as 28 U.S.C. § 2072 (1982). The Federal Rules of Civil Procedure, which took effect in 1938, "from

their inception have applied in all of the District of Columbia Courts, local and federal." *Varela v. Hi–Lo Powered Stirrups*, 424 A.2d 61, 62 (D.C.1980) (quoting *Rieser v. District of Columbia*, 188 U.S.App. D.C. 384, 392, 580 F.2d 647, 655 (1978) (en banc)).

In 1970, Congress enacted the District of Columbia Court Reform and Criminal Procedure Act, Pub.L. No. 91–358, 84 Stat. 473 (1970) ("Court Reform Act"). The Court Reform Act substantially reorganized the District of Columbia court system. The Act provided

Moreover, in *Lanton v. United States,* 779 A.2d 895 (D.C.2001), a criminal defendant, seeking to demonstrate, in a motion filed pursuant to D.C.Code § 23–110 (2001), that his trial counsel had been constitutionally ineffective, submitted two exculpatory statements from neighbors who allegedly witnessed the incident that had precipitated the defendant's prosecution. He also represented in his motion that he had given his counsel the names of the witnesses. Neither of the witness statements was under oath, although one was in the form of an "informal affidavit." The defendant's motion was likewise unsworn. In reversing the trial judge's refusal to consider the unsworn statements and her denial of the § 23–110 motion without a hearing, we stated:

> Although conventional sworn affidavits would have been preferable, it would surely exalt form over substance to deny a hearing simply because the statements were not notarized, especially when, as

for a new local court of general jurisdiction, to be known as the Superior Court of the District of Columbia, and it relieved the United States District Court of much of its responsibility vis-a-vis issues of local law. *See* D.C.Code § 11–901; *Rieser,* 188 U.S.App. D.C. at 386–88, 580 F.2d at 649–51 (discussing the history of court reform).

The Act did not, however, change the rules of procedure theretofore applicable to the District of Columbia courts. In the Act, Congress determined that the Federal Rules of Civil Procedure would apply in the new Superior Court just as they had applied in the United States District Court. The Act provides, in pertinent part:

> The Superior Court shall conduct its business according to the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure ... unless it prescribes or adopts rules which modify those Rules. Rules which modify the Federal Rules shall be submitted for the approval of the District of Columbia Court of Appeals, and they shall not take effect until approved by that court. The Superior Court may adopt and

we have noted, " § 23–110 is a remedy of virtual last resort."

*Id.* at 903 (citation omitted). We went on to observe that

> [t]his case would be in a different posture, and denial of the motion without a hearing might have been appropriate, if the trial judge had given Lanton a specified brief period to present his allegations and the allegations of his witnesses in affidavit form, and if Lanton had failed to comply.

*Id.* at 904 n. 10. Although *Lanton* did not implicate the "affidavit" requirement of Super. Ct. Civ. R. 56(e), the court's reasoning might fairly be applied to the present case. Here, too, the judge could have given Cormier a few days to have Dr. Edwards' Declaration notarized, rather than potentially allowing the outcome of the entire case turn on such a technical omission.[4]

■ Like the Federal Rules of Civil Procedure, our Rules, "reject the approach

enforce other rules as it may deem necessary without the approval of the District of Columbia Court of Appeals if such rules do not modify the Federal Rules.

D.C.Code § 11–946. Thus, Super. Ct. Civ. R. 56 is a rule made pursuant to federal law, not only because it is the same rule that was promulgated by Congress in 1934, but also because it was reaffirmed and made applicable to the Superior Court by the Court Reform Act thirty-six years later. *Cf. Flemming v. United States,* 546 A.2d 1001, 1005 (D.C.1988) ("[A]s a matter of law, Superior Court Rule 23(b) is Federal Rule 23(b), not a conceptually distinguishable rule with identical language."). We therefore conclude that a declaration which complies with 28 U.S.C. § 1746(2) constitutes an "affidavit" within the meaning of Super. Ct. Civ. R. 56.

4. In fact, Cormier's attorney filed a motion to alter or amend the judgment pursuant to Super. Ct. Civ. R. 59, and he proffered a notarized version of the Edwards Declaration. The judge, however, denied the motion, and Cormier did not appeal from that denial.

that pleading is a game of skill in which one mistake by counsel may be decisive to the outcome, and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Zuurbier v. MedStar Health, Inc.,* 895 A.2d 905, 909 (D.C.2006) (quoting *Conley* ). In our view, the trial court's refusal to consider the Edwards Declaration was not in keeping with this principle.

WASA relies on *Potts v. District of Columbia,* 697 A.2d 1249 (D.C.1997), but that case provides it with scant solace. There, the plaintiff proffered an unsworn statement by his counsel summarizing an expert witness' anticipated testimony. The court held that the proffer was insufficient, noting also that "statements by experts which are not made under oath are insufficient to defeat a motion for summary judgment." *Id.* at 1252. But in *Potts,* there was no statement from the expert at all, and certainly none made "under penalty of perjury," as the Edwards Declaration was. The court in *Potts* was not called upon, and did not, decide the question presented here. Accordingly, we conclude that the trial judge erred by refusing to consider the Edwards Declaration.[5]

**B.** *Damages.*

In his order, the trial judge explained as follows his conclusion that Cormier's evidence of damages was insufficient as a matter of law:

> The court understands that Cormier seeks to measure his damages by a collection of bills and receipts that has not

been filed with the court. Cormier has not described these bills and receipts, or even furnished the court with a summary of them. WASA asserts that the bills and receipts "do not evidence the actual work, if any, done at the buildings." Def.'s Mem., at 30. "It is not enough to show that materials were purchased in order to do repairs or that repairs were done at all." *Id.* Further, WASA points out that Dr. Edwards—Cormier's sole expert—has testified that he has no expertise on quantifying damages and is not prepared to do so at trial. Edwards Dep., July 21, 2005, at 113–14. Surprisingly, in his Opposition, Cormier does not provide any specific facts to rebut these arguments. Pl.'s Opp'n, at 57–59. He responds with vague argument only, without pointing to anything in the record that evidences the nature or amount of damages.

Under SCR Civ. Rule 56(e), the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Because Cormier has not done this, there is simply nothing here for a factfinder to base a damages award upon. As the Court of Appeals has stated in *Zoerb v. Barton Protective Services,* 851 A.2d 465, 471 (D.C.2004), "[w]e are at a loss to understand how an impartial jury could be expected to determine, on this record, the amount of damages that [the defendant] should be required to pay." Therefore, the court will grant WASA summary judgment on Cormier's negligence claim with respect to all remaining properties.

---

**5.** WASA also argues (1) that the Edwards Declaration contradicted his deposition testimony and constituted an improper attempt to create a genuine issue of material fact, *see* Hancock v. Bureau of Nat'l Affairs, 645 A.2d 588, 591 (D.C.1994); and (2) that even if the Edwards Declaration were to be considered, the evidence of negligence was insufficient to defeat WASA's motion for summary judgment. Neither of these arguments has been addressed by the trial judge, and we think it appropriate to defer ruling on these issues until after the trial court has had an opportunity to consider them.

The judge's apparent frustration with the manner in which Cormier's evidence of damages was presented is entirely understandable. In circumstances of this kind, the court could reasonably expect counsel to specify in the opposition to the motion the location of the specific damage claimed and the particular repair bills alleged to be attributable to that damage. Nevertheless, even if a claim has been sloppily and unprofessionally presented, summary judgment may not be awarded if the plaintiff's evidence, viewed in the light most favorable to him, is sufficient to present a genuine issue of material fact.

If credited, Dr. Edwards' deposition testimony, and especially his Declaration, established that corrosive water caused pinhole leaks in copper pipes at several of Cormier's properties. Although Cormier's counsel failed to link particular leaks with particular repair bills, an impartial juror could reasonably infer from Dr. Edwards' testimony and Declaration that the pinhole leaks occurred, that some repairs were required, and that those repairs cost Cormier some significant (and more than *de minimis*) amount of money. Indeed, if a juror believed Dr. Edwards, such an inference would be a compelling one. Although, at trial, Dr. Edwards' presentation in opposition to summary judgment, standing alone, would not entitle Cormier to relief, the evidence of damages, viewed in the light most favorable to Cormier, was sufficient to preclude the entry of summary judgment against him.

Citing, *inter alia, Garcia v. Llerena,* 599 A.2d 1138, 1144 (D.C.1991), WASA asserts that a plaintiff is not entitled to an award of damages unless he has established the amount of damages to a reasonable degree of certainty. This proposition is correct in the context of a trial; once the plaintiff has rested, the trial record must be sufficient to provide the jury with a reasonable basis to make an appropriate award. *See, e.g., Zoerb,* 851 A.2d at 471. These principles do not, however, apply at the summary judgment stage.

In the District of Columbia (as elsewhere), in order to survive a motion for summary judgment based on the asserted insufficiency of proof of damages, "a plaintiff need not, at this stage, show the amount of damages[;] he is obligated [only] to show that they exist and are not entirely speculative." *Rafferty v. NYNEX Corp.,* 744 F.Supp. 324, 331 n. 26 (D.D.C. 1990). In *Carroll v. Philadelphia Hous. Auth.,* 168 Pa.Cmwlth. 275, 650 A.2d 1097 (1994), the court, in reversing a trial court order granting summary judgment which was founded upon the basis of an inadequate showing of damages, explained the applicable principles:

> As recognized by the trial court, a jury may not award damages on the basis of speculation or conjecture. *Martin v. Johns–Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985). *Damages are speculative if the uncertainty concerns the fact of damages, not the amount.* See *Pashak v. Barish,* 303 Pa.Super. 559, 450 A.2d 67 (1982).
>
> \* \* \*
>
> In the case before us, there is no question as to the fact of damages: Lukisha Carroll requires continuous medical care.
>
> \* \* \*
>
> The uncertainty in this case concerns the question of whether the amount provided in the settlement agreements for Lukisha Carroll's maintenance and support will be sufficient.

*Id.* at 1100 (emphasis added and footnote omitted). Under these circumstances, the award of summary judgment was held to

be inappropriate, and the court ruled that the amount of damages was to be determined at trial. *Accord, Aircraft Guaranty Corp. v. Strato–Lift, Inc.*, 991 F.Supp. 735, 739–40 (E.D.Pa.1998) (citing *Carroll* ) (uncertainty as to the amount of damages does not entitle a defendant to summary judgment if a genuine issue of material fact exists as to the fact of damages).

The authorities on which WASA relies, *e.g., Garcia,* 599 A.2d at 1144, were decided in the significantly different context of a trial. Where, as in *Garcia,* the plaintiff has rested his case without providing a reasonable basis for assessing the amount of damages, the defendant is entitled to judgment as a matter of law. Indeed, in the present case, if Cormier had rested at trial with no more proof of damages than he presented in opposition to WASA's motion for summary judgment, then the direction of a verdict against him would be altogether appropriate, for "[w]e [would be] at a loss to understand how an impartial jury could be expected to determine, on this record, the amount of damages that [WASA] should be required to pay." *Zoerb,* 851 A.2d at 471 (footnote omitted).

■■■ But summary judgment and direction of a verdict at trial, while generally implicating similar or identical legal standards, *see, e.g., Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 199 (D.C.1991), differ materially from one another for purposes of the present analysis. If, at trial, a plaintiff shows that he is entitled to some damages but provides mere speculation as to the amount, then a verdict *must* be directed, for the plaintiff will have no further opportunity to refine or add to his proof. However, a plaintiff who, like Cormier, has made a sufficient showing with respect to the critical issue, *i.e., the fact* of damages, to foreclose the entry of summary judgment, *see Rafferty,* 744 F.Supp. at 331 n. 26, will still have the opportunity,

at trial, to present evidence as to *the amount* of damages. WASA has cited no authority, and we know of none, holding that a plaintiff's failure at the summary judgment stage to prove *the amount* of damages warrants entry of judgment for the defendant, even when the plaintiff has shown the existence of a genuine and material question as to whether he or she suffered *some* compensable damage.

### C. *Statute of limitations.*

■■■ The trial judge held that as to 1300 Harvard Street, N.W., and 1460 Euclid Street, N.W., any claims by Cormier based on conduct that occurred prior to February 21, 2000 are time-barred. After noting that "[u]nder the discovery rule, 'the statute of limitations will not run until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing,' *Oparaugo v. Watts,* 884 A.2d 63, 72 n. 6 (D.C.2005) (citation omitted)," the judge applied the discovery rule to the record before the court:

> WASA asserts that Cormier's letters show that he had discovered the damage and its potential connection to WASA before February 21, 2000. Thus, WASA argues that Cormier's claims all accrued before that date, rendering them time-barred. In response, Cormier asserts that he did not have actual notice of a problem, but that his letters were based merely upon "concerns and suspicions." Pl.'s Opp'n, at 16. He argues that he had actual notice of the problem only when Dr. Edwards furnished him with the Edwards Report # 1 in 2003. *Id.* at 15. The court, however, considers this unpersuasive—the language of Cormier's letters speak [sic] for themselves. In them, he stated that WASA's water was "attacking" his pipes and fixtures. Such bold statements belie his current

argument that a layperson does not have the training and experience to make such a determination. *Id.* at 12. Thus, Cormier's claims—at least those respecting the two properties mentioned in the letters, 1300 Harvard Street and 1400 Euclid Street—accrued when he drafted and signed the respective letters.

Cormier argues that his claims are saved by the continuing tort doctrine, as expressed by the U.S. Court of Appeals in *Page v. United States,* 729 F.2d 818 (D.C.Cir.1984). *Page* states that "when a tort involves continuing injury, the cause of action accrues, and the limitations period begins to run, at the time the tortious conduct ceases." *Id.* at 821 (citation omitted). Cormier asserts that under this rule, because WASA's failure to investigate or correct the water damage constituted continuous negligence, application of this rule tolled the running of limitations until WASA began using non-corrosive water. Our Court of Appeals, however, explicitly rejected *Page* in *National Railroad Passenger Corp. v. Krouse,* 627 A.2d 489 (D.C. 1993), and has since held that "once the plaintiff has been placed on notice of an injury and the role of the defendants' wrongful conduct in causing it, the policy disfavoring stale claims makes application of the 'continuous tort' doctrine inappropriate." *Hendel v. World Plan Exec. Council,* 705 A.2d 656, 667 (D.C. 1997); *Accord Beard v. Edmondson & Gallagher,* 790 A.2d 541, 546 (D.C.2002). Thus, because Cormier's letters demonstrate that he was on notice of his potential claims, the fact that WASA may have engaged in a continuing tort did not toll the running of limitations.

We agree with the trial judge's analysis. Cormier's theory is that the statute of limitations did not begin to run until Dr. Edwards, "opine[d] on the connection between the pipe problem and WASA's water (on) May 2, 2003," *more than two months after he filed his lawsuit.* This contention is altogether lacking in merit. If we were to accept it, then a plaintiff could defer the running of the statute by simply failing to consult an expert. Under Cormier's reasoning, he could have brought the lawsuit as late as in 2006, three years after receiving Dr. Edwards' advice, even though he first accused WASA of damaging his copper pipes in 1998. In any event, as correctly noted by WASA, "[i]t would be dangerous for appellant to contend that they [sic] had not 'discovered' their [sic] claim ... until they [sic] received Dr. Edwards' report when they filed their [sic] complaint before receiving the report." [6] To file a complaint without even "inquiry notice" regarding the truth of the allegations therein would be difficult to reconcile with the requirements of Super. Ct. Civ. R. 11. Yet, under Cormier's theory, he did not have inquiry notice when the action was brought.

■ Cormier claims that the statute of limitations was tolled until 2003 because, without Dr. Edwards' expertise, Cormier neither knew nor should have known the cause of the damage to his property. But as the en banc court noted in *Colbert,* 641 A.2d at 473, "[t]he law of limitations requires only that [the plaintiff] have *inquiry notice* of the existence of a cause of action ..." (Emphasis added; citation omitted.) Further, "[t]he discovery rule does not ... give [a] plaintiff *carte blanche* to defer legal action indefinitely if she knows or should know that she *may have* suffered injury and that the defendant *may have* caused her harm." *Hendel,* 705 A.2d at 661 (emphasis added). By

---

**6.** As previously noted, Cormier is the only appellant.

the time he wrote his accusatory letters, Cormier indisputably knew or should have known that WASA *may have been* the cause of the alleged damage to his property.

▉▉▉▉ Citing *Brin v. S.E.W. Investors,* 902 A.2d 784 (D.C.2006), Cormier asserts that the date on which his claim ripened under the discovery rule should have been left to the jury to decide. We disagree. In *Brin,* the plaintiff consulted several specialists within the three-year statutory limitations period after she was aware of her injury in order to determine its cause. In the present case, on the other hand, Cormier took *no* action until after three years had elapsed following his sending of the last of his three letters. We conclude that on this record, at least as to the two properties in question, Cormier was on inquiry notice more than three years before he brought suit, and no impartial trier of fact could reasonably find to the contrary.

### III.

### WASA'S CROSS–APPEAL

▉▉▉▉ On Cormier's motion, the trial judge dismissed without prejudice (1) Cormier's claim for injunctive relief for alleged nuisance and trespass; and (2) his request for a declaratory judgment protecting Cormier from liability to potentially affected third parties for injuries caused by WASA's alleged failure to provide safe (*i.e.,* non-corrosive) water to Cormier's properties. In this court, as in the trial court, WASA contends on a number of grounds [7] that the claims for injunctive relied should have been dismissed with prejudice. Applying the standards set forth in *Thoubboron v. Ford Motor Co.,*

624 A.2d 1210, 1213 (D.C.1993) and *WMATA v. Reid,* 666 A.2d 41, 45 (D.C.1995), we conclude that the trial judge did not abuse his discretion in ordering that the dismissal of the claims of nuisance and trespass be without prejudice.

Cormier's claim for declaratory relief, on the other hand, brings to mind the late Judge John Minor Wisdom's reference to "the eerie atmosphere of nevernever land." *Meredith v. Fair,* 298 F.2d 696, 701 (5th Cir.1962). Cormier has asked the Superior Court to write, in effect, an advisory opinion which would apparently extinguish the right of unnamed parties not before the court to complain of unspecified conduct on Cormier's part. Because any hypothetical dispute between Cormier and the unnamed parties would present a question which "depends on contingencies which may not come about, that question is not ripe for judicial resolution." *Smith v. Smith,* 310 A.2d 229, 231 (D.C.1973). Moreover, and even more fundamentally, Cormier is not entitled, in litigation with WASA, to an order foreclosing the rights of strangers to the litigation who will have had no opportunity to be heard. *See, e.g., American Univ. in Dubai v. District of Columbia Education Licensure Comm'n,* 930 A.2d 200, 207–08 (D.C.2007) (discussing right of a non-party to notice and an opportunity to be heard if that non-party's interest may be affected by the litigation). Under these circumstances, we conclude that Cormier's request for declaratory relief should be dismissed with prejudice.

### IV.

### CONCLUSION

In No. 06–CV–1370 (Cormier's appeal) the judgment is affirmed in part (as to the

---

**7.** These grounds include (1) that the claims are time-barred; (2) that they are moot; and (3) that WASA would be prejudiced by the

delay if these claims were re-brought and if WASA had to defend against them.

statute of limitations) and reversed in part (as to the issues of negligence and damages). In No. 06–CV–371 (WASA's cross-appeal), the judgment is affirmed in part (as to injunctive relief) and reversed in part (as to declaratory relief). The case is remanded for further proceedings consistent with this opinion.

*So ordered.*[8]

8. The remand of the case is without prejudice to any contention by either party which is not foreclosed by our opinion herein. The court has deliberately declined to decide several questions which were discussed by the parties in their briefs and arguments but which the trial court has not yet addressed.