**1303 CLIFTON STREET, LLC, Appellant,**

v.

**DISTRICT OF COLUMBIA, et al., Appellees.**

**No. 10–CV–404.**

District of Columbia Court of Appeals.

Argued April 12, 2011.
Decided March 8, 2012.

26

Jason A. Pardo, with whom Russell S. Drazin, Washington, DC, was on the brief, for appellant.

John L. Davie, Special Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellees.

Before GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges, and EPSTEIN, Associate Judge, Superior Court of the District of Columbia.[*]

BLACKBURNE–RIGSBY, Associate Judge:

Appellant 1303 Clifton Street, LLC, ("Clifton Street") challenges the trial court's denial of its request for declaratory judgment and the trial court's grant of summary judgment in favor of appellees District of Columbia ("District") and Lauren Pair,[1] administrator for the Rental Conversion and Sales Division ("CASD") of the District of Columbia's Department of Housing and Community Development. Appellant planned to convert its property into condominiums and sought a declaratory judgment to exempt it from paying the statutory conversion fee, claiming that its property was "not a housing accommodation" and therefore was not subject to a conversion fee on the sale of its units. There remains a material fact at issue in this case: whether the pre-converted property was exempt from the conversion process. The trial court did not reach this issue because it decided that appellant was either procedurally barred or estopped from seeking status as a non-housing accommodation, and granted summary judgment in favor of appellees. We reverse and vacate the trial court's grant of summary judgment, with instructions that the trial court remand this case to CASD for further proceedings consistent with this opinion.

## I. Background

Before a property may be offered for sale as a condominium unit, the owner must first apply for condominium registration with CASD. D.C.Code § 42–1904.02(a) (2001). If the property is a condominium at the time of application—defined as real estate with designated portions for separate and common ownership—the owner may directly apply for the registration. D.C.Code §§ 42–1901.02(4) (2001) and –1904.03. However, if the property is being converted into a condominium from some other use, the owner must first go through the conversion process outlined in the Rental Housing Conversion and Sale Act of 1980, as amended ("Conversion Act"). D.C.Code §§ 42–3401.01 to –3405.13 (2001). The Conversion Act makes a distinction between the process required to convert a property that is a housing accommodation, which the Conversion Act defines as a structure containing one or more rental units, see D.C.Code § 42–3401.03(11), and the process required to convert a property that is not a housing accommodation. A property owner seeking to convert a housing accommodation into a condominium must seek tenant approval and pay a five percent conversion fee on the sale price at the time the condominium units are sold. D.C.Code §§ 42–3402.04(a–1), (b–1) (2009 Supp.). The owner of a housing accommodation that is not occupied may apply for a vacancy exemption, which exempts the owner from seeking tenant approval, but not from paying the conversion fee. See D.C.Code §§ 42–3402.10, –3402.04(a–1). If the property is not a housing accommodation, the owner

---

[*] Sitting by designation pursuant to D.C.Code § 11–707(a) (2001).

[1]. Lauren Pair was being sued in her official capacity.

may apply for a "not-a-housing-accommodation" exemption ("NHA exemption"), which exempts the property owner from having to pay a conversion fee. 14 DCMR § 4708.4 (2004). For example, the owner of a vacant warehouse who wishes to convert his or her building into loft condominiums would qualify for this exemption.

On May 16, 2008, appellant purchased a vacant four-story row house property located at 1303 Clifton Street, Northwest, in the District of Columbia ("Clifton Street Property") and initiated the process to convert the property into a condominium. Appellant initially applied for a vacancy exemption for the Clifton Street Property, describing the property as a shell that was both vacant and uninhabitable. Administrator Pair informed appellant that its vacancy exemption application had been approved and that the Clifton Street Property was now exempt from the tenant election requirements of § 42–3402.10, but was still subject to the conversion fee requirements of § 42–3402.04. Administrator Pair's letter advised appellant that it could proceed to file a registration application to convert the property to a condominium. Appellant filed a registration application on October 6, 2008, and ten days later, on October 16, 2008, CASD issued a notice of filing to Clifton Street.[2] CASD approved the application and registered the Clifton Street Property as a condominium on November 10, 2008.

Over a month after CASD issued the notice of filing in connection with the Clifton Street Property and nine days after it was registered as a condominium, Administrator Pair had a conversation with Jason Pardo, counsel for Clifton Street. Administrator Pair described to Pardo the circumstances in which a vacant property might fall within the NHA exemption to the Conversion Act, and informed him that such properties would not be required to pay the conversion fee on their units. However, Administrator Pair also informed him that when the notice of filing issues, the conversion process ends, and amendments to the exemption application would not be considered after that date. In a letter memorializing the conversation approximately three months later, Administrator Pair recalled that she advised Pardo:

> [T]hat a structure that is not a "housing accommodation" as defined under the Conversion Act ... would be exempt from certain conversion requirements. Commercial properties or owner-occupied dwellings are typically designated as 'not-a-housing accommodations.' As I recollect, [Pardo was] unaware of the availability of an NHA exemption, and shortly after our discussion, [he] withdrew several pending vacancy exemption applications on behalf of other clients, and resubmitted NHA applications instead.

When Pardo submitted an NHA exemption application to exempt the Clifton Street Property from paying the conversion fee, Pardo sent Administrator Pair a copy of it. Pardo did not seek to withdraw the vacancy exemption application he had originally filed on behalf of the Clifton Street Property, but rather characterized the NHA exemption application as a "supplemental/amended exemption based on the fact that the [Clifton Street] Property is not a Housing Accommodation."

Administrator Pair denied Clifton Street's supplemental application for the

2. The Mayor's issuance of a notice of filing is procedurally important, because, pursuant to the Conversion Act, the property is deemed to have converted into a condominium not at registration but rather at the moment the notice of filing is issued. *See* D.C.Code § 42–3401.03(3) (2009 Supp.).

NHA exemption, concluding that Clifton Street could not seek retroactive withdrawal of an exemption (the earlier vacancy exemption application) after the notice of filing had been issued and the conversion process completed. Administrator Pair explained her understanding that a legal conversion of a property occurs at the time of issuance of the notice of filing. *See* D.C.Code §§ 42–3401.03(3) and – 1904.06(a). She reasoned that "[t]he type of certificate of eligibility to convert is immaterial; when the notice of filing issues, by operation of law, the property is deemed to have converted to a condominium[,]" and that it was "inequitable from a policy perspective" to retroactively withdraw the vacancy exemption because "[c]hanging the basis for the conversion retroactively sets a bad precedent and a slippery slope for other retroactive conversion applications."

Appellant filed a complaint in Superior Court against Administrator Pair and the District seeking, *inter alia,* a declaratory judgment that it was not required to pay a conversion fee in connection with the sale of its condominium units because it was not a housing accommodation. Both parties subsequently filed cross-motions for summary judgment. The trial court granted the District's motion for summary judgment and dismissed appellant's complaint with prejudice. The motions judge found that the procedural bar asserted by Administrator Pair was a reasonable interpretation by CASD of the Conversion Act and that the interpretation "comports with the statute's plain meaning and the design of the conversion process as a whole." The motions judge further concluded that appellant was estopped from seeking the NHA exemption, since it had represented in the vacancy exemption application that it was a housing accommodation. Appellant filed this appeal on April 5, 2010.

## II. Analysis

■■■ We are asked to determine whether the two bases of the trial court's grant of summary judgment in favor of the government—that appellant was procedurally barred from applying for the NHA exemption or, in the alternative, estopped from seeking the exemption—were proper. We recognize that summary judgment is appropriate only when there are no material facts at issue and when it is clear that the moving party is entitled to judgment as a matter of law. *Padou v. District of Columbia,* 29 A.3d 973, 980 (D.C.2011). "The question whether summary judgment was properly granted is one of law, and we review the trial judge's order *de novo.*" *Cormier v. District of Columbia Water & Sewer Auth.,* 959 A.2d 658, 662 (D.C.2008) (citations omitted). In conducting our *de novo* review of the trial court's grant of summary judgment, we must view the record in the light most favorable to the non-moving party. *Id.* at 663. We first conclude that appellant is not procedurally barred from applying for the NHA exemption because we are not persuaded that the Conversion Act should be read to foreclose a property owner from applying for an NHA exemption once the notice of filing has been issued. We further conclude that the doctrine of estoppel is not applicable in this case. Therefore, summary judgment was not proper because the District was not entitled to judgment as a matter of law, and remand is necessary for CASD to determine whether the Clifton Street Property was a housing accommodation prior to conversion.

## A.

■■■ In analyzing whether appellant was procedurally barred from applying for NHA status, the motions judge found that Administrator Pair's interpretation of the Conversion Act—which bars an applicant

from seeking NHA status after the conversion process is complete—deserved substantial deference and should be adopted by the court as long as it was reasonable, and the motions judge determined that the agency's construction of the Conversion Act was reasonable. We disagree.

■■■■■ "We review the trial court's construction of the Act *de novo*, but at the same time we give deference to the interpretation adopted by the agency that administers the Act." *District of Columbia v. Gallagher*, 734 A.2d 1087, 1090 (D.C.1999); *see also Mallof v. District of Columbia Bd. of Elections & Ethics*, 1 A.3d 383, 392 n. 39 (D.C.2010) (noting that we give "substantial deference" to agency interpretations of the regulations they have promulgated). Not all agency determinations, however, are deserving of a heightened level of deference. In particular, we have recognized that informal agency action is generally not entitled to such deference. *See Reichley v. District of Columbia Dep't of Emp't Servs.*, 531 A.2d 244, 248 n. 4 (D.C.1987). When "an agency informs the public what it thinks a statute means (as in program guidelines or informal rulings) without purporting to exercise law-making authority," the "least deferential standard of review" is applicable. *Id.* Here, Administrator Pair's letter outlining the procedural bar against appellant seeking the NHA exemption was adopted in an informal ruling: it was not a rule or regulation adopted through a formal notice-and-comment rulemaking proceeding or contested case in conformity with the District of Columbia Administrative Procedure Act ("DCAPA"), D.C.Code §§ 2–501 to –594 (2001); it was not issued pursuant to an express delegation of rulemaking authority to CASD administrator; and it was not published. *See* D.C.Code § 2–505(a) (noting that formal rulings require agencies, prior to adopting a rule, to publish in the

DC Register notice of the intended action so that persons have the opportunity to comment); *Mallof, supra*, 1 A.3d at 393 (finding that an agency's interpretation was a formal ruling since it was adopted after briefing and oral argument in a contested case proceeding under the DCAPA, and published on the agency's website); *Reichley, supra*, 531 A.2d at 248 n. 4 (citing cases) (noting that regulations adopted by express delegation of authority, through notice and comment, or by formal adjudication are formal rulings warranting a high level of deference). Therefore, CASD's interpretation of its statutory authority to bar NHA exemption applications after the notice of filing is issued receives the "lesser degree of deference described in *Skidmore v. Swift & Co.*, [323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).]" *Mallof, supra*, 1 A.3d at 393. Under *Skidmore*, the weight to be accorded an interpretative rule "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade[.]" *Reichley, supra*, 531 A.2d at 248 n. 4 (quoting *Skidmore, supra*, 323 U.S. at 140, 65 S.Ct. 161).

Applying this standard, we are not persuaded by CASD's interpretation of the Conversion Act in a manner that procedurally bars Clifton Street from applying for an NHA exemption after the notice of filing has been issued. Relying on D.C.Code § 42–3401.03(3)—which establishes that condominium conversion occurs at the issuance of the notice of filing— CASD asserts that "when the notice of filing issues, by operation of law, the property is deemed to have converted to a condominium" and, therefore, "[t]he owner is … ineligible for a retroactive exemption withdrawal and a retroactive NHA exemption issuance." Administrator Pair's letter explained that "an applicant that

received one exemption type may seek another type of exemption, however that inquiry or application must occur prior to the property's conversion." Specifically, Administrator Pair reasoned in her letter: "Changing the basis for the conversion retroactively sets a bad precedent and a slippery slope for other retroactive conversion applications. There would be little to prevent an owner from applying years after conversion for an exemption." Here, we conclude that the agency did not give a persuasive explanation for its rule that a property owner may not apply for an NHA exemption after the notice of filing issues.

First, CASD's slippery slope argument is unconvincing because the argument presumes that, absent CASD's proposed procedural bar, the result will be a slide from the present case—where petitioner seeks an NHA exemption several months after conversion—to a case where a petitioner requests an NHA exemption years after the conversion process has ended. However, we are unconvinced that absent the procedural bar, owners will wait years to file for an NHA exemption. Owners have a financial incentive to sell units as soon as possible; similarly, they have an incentive to file an NHA exemption application as soon as possible—before the units are sold and the conversion fee is due. Thus, an owner who believes his property is not a housing accommodation has no evident tactical reason to wait until after the notice of filing issues to submit an NHA exemption application. Furthermore, while CASD's "slippery slope" argument raises concerns for why a deadline is necessary, it does not address why that deadline should be at the point of issuance of the notice of filing.

The record here suggests that the reason Clifton Street delayed its request for an NHA exemption until after the conversion process was complete was not because Clifton Street initially recognized that it qualified for an NHA exemption and delayed its application to gain a tactical advantage. Instead, the record shows that the delayed request occurred because Clifton Street did not realize at first that it qualified for NHA status. It was only after learning that the agency might consider structures that were uninhabitable shells to be non-housing accommodations rather than vacant housing accommodations that Clifton Street became aware that the Clifton Street Property could qualify for NHA status. So, arguably, CASD's concern is not that owners of properties that are not housing accommodations would, in bad faith, wait until after the issuance of the notice of filing to seek NHA status, but that owners would not do their due diligence to become aware of this exemption, and then, years later, seek to apply for the NHA exemption, however innocent their ignorance. While this may be a legitimate concern, as discussed below, CASD does not explain how this concern is addressed by its proposed procedural bar or why issuance of the notice of filing is the event that balances the need to protect against belated applications with the agency's interest in adjudicating claims on the merits.

Not only do we find CASD's proffered "slippery slope" rationale for the procedural bar unpersuasive, we also note that CASD failed to thoroughly consider *all* relevant factors in implementing this procedural bar, as required by *Skidmore*. 323 U.S. at 140, 65 S.Ct. 161. For example, this court has recognized a strong policy interest in favor of decisions on the merits and against procedural defaults. *E.g., OneWest Bank, FSB v. Marshall*, 18 A.3d 715, 721 n. 4 (D.C.2011) ("Courts avoid 'the extreme remedy' which precludes consideration of the substance of a party's filing and the resolution of an issue on its merits, especially where the substan-

tial rights of the opposing party are not affected."). The same policy reasoning should apply in administrative proceedings as well as in judicial proceedings. *See, e.g., Frausto v. U.S. Dep't of Commerce,* 926 A.2d 151, 157 (D.C.2007) (concluding that agency abused its discretion in applying procedural bar since, among other things, agency failed to consider petitioner's good faith in failing to seek relief sooner, the potential prejudice to the parties, or the strong policy in favor of adjudication on the merits and finality of judgments). Yet, CASD's decision does not reflect any consideration of this policy in favor of decisions on the merits—nothing in the letter indicates that the agency gave any weight to this interest in decisions on the merits. CASD also does not claim that its procedural rule is consistent with earlier or later pronouncements, which is another factor explicitly listed in *Skidmore* as affecting the power to persuade. 323 U.S. at 140, 65 S.Ct. 161. Moreover, CASD has not alleged that any other property owner waited until after issuance of the notice of filing to submit an NHA exemption application—before or after the issue arose with Clifton Street—and if owners would lie in the weeds before applying for NHA status (despite their incentive to raise the NHA issue sooner rather than later), one would expect that the agency would need to invoke its procedural rule on other occasions.

Furthermore, CASD's rule lacks persuasiveness because it fails to address a factor that should be of primary importance when creating its procedural rule: the rule's *connection* to the goals or purposes of the Conversion Act and to the "rational operation" of the conversion process. *See Judulang v. Holder,* —— U.S. ——, 132 S.Ct. 476, 487, 181 L.Ed.2d 449 (2011). First, foreclosing Clifton Street from applying for an NHA exemption after the notice of filing issues does not further the

purpose of the Conversion Act, which is to curb the depletion of the rental housing stock. D.C.Code § 42–3401.02 (2006 Supp.). If the Clifton Street Property is not a housing accommodation, it cannot deplete the rental housing stock upon conversion to a condominium, because it would not have been used for rental property in the first instance. The regulations clearly intend to exempt properties that are not housing accommodations from the conversion fee by stating that "[a]ny structure that does not fall within the definition of a housing accommodation ... shall be exempt from [T]itle II [Conversion Procedures] of the Act." 14 DCMR § 4708.4. Even though appellant waited until after the notice of filing was issued to apply for the NHA exemption, knowing whether the Clifton Street Property is or is not a housing accommodation is essential to preventing an "incongruous" application of the law—*i.e.,* forcing an owner of a property that is not a housing accommodation to follow procedures and pay fees when the statute has specifically exempted him from doing so. *See Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 371, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). In its letter ruling, CASD did not attempt to tie its procedural rule to this purpose of the Conversion Act.

Second, the procedural bar foreclosing supplementation of an NHA exemption once the notice of filling issues has no connection to facilitating the smooth operation of the conversion process. Instead, the issuance of the notice of filling, and the concomitant conversion from a housing (or non-housing) accommodation structure to a condominium, is relevant to the *registration* process. The notice of filing issues automatically five business days after a condominium owner submits an application for condominium registration. D.C.Code § 42–1904.06(a). At this point,

it is important that the character of the property changes from an undefined structure to a condominium because the notice of filing also commences a sixty-day period during which the Mayor (as delegated to CASD) conducts an investigation into whether all the required federal and local *condominium* disclosure requirements have been met. *Id.* §§ 42–1904.05, –.06 (a)-(c). If the structure does not become a condominium at that point, the investigation into whether the structure meets condominium requirements cannot be performed. So the issuance of the notice of filing has a definite nexus to the registration process: it commences the investigation process to determine whether registration is prudent and it defines the structure as a condominium to bring it under the purview of federal and state condominium requirements. But a similar nexus is absent from the conversion process. The issuance of the notice of filing neither commences nor ends the conversion process, since the Conversion Act requires compliance with the conversion procedures well in advance of and long after the issuance of the notice of filing. For example, payment of the conversion fees, which terminates all compliance with the Conversion Act, does not occur until the last condominium unit is sold, which invariably occurs after the issuance of the notice of filing. Neither is the issuance of the notice of filing, and the resulting conversion into a condominium, necessary (as it is for the registration process) to make compliance with the conversion process possible. An owner can comply with the conversion process requirements—*i.e.* holding tenant elections, providing documentation supporting requested exemptions—without the issuance of the notice of filing. Furthermore, payment of the conversion fee is contingent on whether the condominium units are sold, not on whether the structure is "deemed" by the notice of filing to be converted into a condominium. CASD has shown no rational connection between the issuance of the notice of filing and either the purpose of Conversion Act or the operation of the conversion process.

■ Additionally, CASD's procedural rule lacks persuasion because under the circumstances of this case, there is no indication that CASD would suffer prejudice by considering the merits of Clifton Street's request for NHA status. In the judicial context, limitation periods exist to prevent prejudice because at some point, it becomes difficult to obtain the information needed to evaluate the validity of a party's assertions. *See Farris v. Compton,* 652 A.2d 49, 57–58 (D.C.1994). This is not the case here. Perhaps because Clifton Street submitted its NHA exemption application only a short time after issuance of the notice of filing, CASD did not find or even suggest in its letter ruling that Clifton Street's delay in submitting its application for an NHA exemption caused information to become stale or unavailable or other prejudice. Therefore, CASD has shown no prejudice by Clifton Street's delay in applying for the NHA exemption.

We recognize that CASD has an interest in finality to its administrative process. *See Marsh, supra,* 490 U.S. at 371–72, 109 S.Ct. 1851, (noting that "it would make sense . . . at some point in the life of a project" to halt the submission of supplemental environmental impact statement reports, "because the agency would no longer have a meaningful opportunity to *weigh* the benefits of the project versus the detrimental effects"); *Withey v. Perales,* 920 F.2d 156, 159 (2d Cir.1990) (noting that almost all substantive rights are subject to limitations periods, and such limits are rational given the financial and administrative costs of keeping administrative files "perpetually available"). Howev-

er, it strikes us as somewhat arbitrary that the deadline to apply for an NHA exception should be linked to the issuance of the notice of filing. *See Judulang, supra,* 132 S.Ct. at 490. We express no opinion as to when a more appropriate deadline would be to submit an NHA exemption application, only that the one offered by CASD is not persuasive for the aforementioned reasons. Therefore, Clifton Street's NHA exemption application was not procedurally barred and should have been considered by CASD on the merits.[3]

### B.

■ We now turn to the trial court's second basis for granting the appellees' motion for summary judgment. The motions judge found that Clifton Street was estopped from seeking an NHA exemption because, in its vacancy exemption application, it twice referred to the Clifton Street Property as a housing accommodation. *See Hardy v. United States,* 988 A.2d 950, 965 (D.C.2010) (noting that judicial estoppel precludes a party from asserting inconsistent positions in different legal proceedings); *Prince Constr. Co., Inc. v. District of Columbia Contract Appeals Bd.,* 892 A.2d 380, 386 (D.C.2006) (recognizing that the doctrine of judicial estoppel can apply in the administrative context). We generally consider three factors in deciding whether to apply judicial estoppel:

First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire

whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Hardy, supra,* 988 A.2d at 964 (quoting *Mason v. United States,* 956 A.2d 63, 66 (D.C.2008)).

■ However, the application of the doctrine of estoppel in this case is improper. Judicial estoppel is concerned with preventing parties from "deliberately changing positions according to the exigencies of the moment[.]" *New Hampshire v. Maine,* 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal quotation mark and citation omitted). Here, none of the three factors discussed in *Hardy* indicate that Clifton Street should be estopped from filing its supplemental application for an NHA exemption. In both its initial vacancy exemption application as well as its later NHA exemption application, Clifton Street consistently described the property as an uninhabitable shell. Clifton Street changed only its characterization of the property in legal terms as a housing accommodation. Nor did Clifton Street derive any unfair advantage or impose any unfair detriment on CASD by

---

**3.** Additionally, even if we were persuaded by CASD's explanation of its rule, it is questionable whether CASD would be able to apply the rule against Clifton Street, since generally substantive rules that do more than simply clarify or explain a statutory or regulatory term—which CASD's rule arguably does—cannot be applied to an individual unless the agency first adhered to the requirements for notice and comment outlined in the DCAPA.

*See Andrews v. District of Columbia Police & Firefighters Ret. & Relief Bd.,* 991 A.2d 763, 771 (D.C.2010) ("[W]hen an agency supplements a statute, such as by adopting new requirements or limits or imposing new obligations, the rule is invalid unless it had been adopted through notice-and-comment rulemaking and published in compliance with the DCAPA.").

seeking an additional exemption based on the same, consistent factual allegations. In our view, Clifton Street's actions do not warrant application of the equitable doctrine of estoppel. We therefore conclude that Clifton Street was not estopped from seeking an NHA exemption.

### III. Conclusion

The trial court erroneously concluded that Clifton Street was procedurally barred and judicially estopped from applying for an NHA exemption once the notice of filing had issued. Neither of these bases for granting summary judgment can be sustained, so the issue of whether the Clifton Street Property is an NHA is left open for determination. We therefore reverse and vacate the trial court's grant of summary judgment to appellees, and remand to the Superior Court with instructions to remand to CASD[4] for a determination of whether the Clifton Street Property—prior to conversion upon the issuance of the notice of filing—was a housing accommodation pursuant to D.C.Code § 42–3401.03(11).

*So ordered.*

---

4. This case comes to us on appeal from the Superior Court's entry of summary judgment denying appellant the declaratory relief it sought as opposed to via a petition for review directly with our court. *See* D.C.Code § 2–510(a) (2001). While we reverse and vacate the trial court's entry of summary judgment in favor of appellees, we remand to Superior Court with directions to remand this case to CASD, as deciding whether the property was a housing accommodation prior to conversion requires the resolution of issues that have been placed within the special competence of CASD. *See Murchison v. District of Columbia Dep't of Pub. Works*, 813 A.2d 203, 206 (D.C. 2002) (remanding to Superior Court with directions to remand to administrative body to make factual determinations); *Grillo v. District of Columbia*, 731 A.2d 384, 387 (D.C. 1999) (same); *District of Columbia Dep't of Pub. Works v. L.G. Indus., Inc.*, 758 A.2d 950, 955–56 (D.C.2000).