**Thomas G. DOEPEL, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 85–519.

District of Columbia Court of Appeals.

Argued Feb. 11, 1986.

Decided June 24, 1986.

Stephanie Miller, with whom Michael J. Madigan and William E. Potts, Jr., Washington, D.C., were on brief, for appellant.

Robert Carson Godbey, Asst. U.S. Atty., with whom Joseph E. DiGenova, U.S. Atty.,

and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on brief, for appellee.

Before BELSON, ROGERS and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

This case is before us for the second time; indeed, in a sense, it may be said the third time. It is before us now on an appeal from the trial court's denial, without hearing, of post conviction relief under D.C.Code § 23–110 (1981). We affirm.

In 1974, after a three-week trial, a jury found appellant Doepel guilty of first-degree premeditated murder, felony murder and rape. He appealed to this court. During the pendency of the appeal a motion for a new trial was filed on the basis of newly-discovered evidence; namely, that a government witness had given false testimony. We deferred decision on the direct appeal pending action on the motion. In 1978, the trial court conducted hearings on the motion on four different days and ultimately denied the motion in a 19-page memorandum order. Doepel appealed the denial to this court. Since the appeals from the order and from the conviction presented some overlapping issues and were to some extent interdependent, we disposed of both in one opinion and affirmed. *Doepel v. United States*, 434 A.2d 449 (D.C.), *cert. denied*, 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981).[1]

On May 24, 1984, Doepel filed a pro se application for a writ of habeas corpus. The motion was treated as one made under D.C.Code § 23–110 (1981). His arguments, as subsequently developed by court-ap-

pointed counsel, were two: (1) that because of his intoxication, there was insufficient evidence to support the conviction for first-degree murder, specifically, failure to prove premeditation and deliberation, as required by D.C.Code § 22–2401 (1973); and (2) there was insufficient evidence to support the conviction of rape, specifically, failure to prove that the sexual intercourse was non-consensual as required by D.C. Code § 22–2801 (1973).[2]

Doepel presented the insufficiency of the evidence argument in constitutional terms, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On March 8, 1985, the trial court without a hearing denied Doepel's motion by written order, holding in pertinent part:

> [T]he court finds that the grounds on which defendant seeks relief are those which would be the subject of a direct appeal, rather than for relief as provided for in § 23–110. Moreover, the court notes that the Court of Appeals in its decision in *Doepel v. United States*, (supra) at p. 453, held that the defendant's written confession was "sufficient evidence to justify the verdict of guilty" to the Murder I offense, and refused to find error with the trial court's treatment of the defendant's insanity defense when he raised the issue of "pathological intoxication."

The correctness of this order of denial is before us.

We find that the issues raised by Doepel were in fact disposed of in our prior consideration of his direct appeal and his appeal from the 1978 order denying him a new trial.[3] It is well-settled that where an ap-

1. The case was remanded for resentencing because rape is a lesser-included offense of felony murder, and appellant could not be sentenced for both, even concurrently.

2. D.C.Code § 22–2401, defining first-degree murder, and § 22–2801, defining rape, as they appeared in the 1973 edition, remain unchanged in the 1981 edition. Proof of the crime of rape was, of course, essential to support the conviction for felony murder under § 22–2401.

3. Appellant's reply brief in the instant appeal expressly acknowledges that insufficiency of the evidence had been raised in the prior appeal, noting that while the claims did not specifically assert insufficiency of the evidence, they did *"relate* to the issues of criminal intent and the government's proof of rape and therefore encompassed appellant's present contention that there was insufficient evidence to convict him beyond a reasonable doubt of both murder in the first degree and rape underlying the felony

pellate court has disposed of an issue on appeal, it will not be considered afresh on collateral attack in a trial court of the same judicial system, absent special circumstances.[4] *See, e.g., United States v. Shabazz,* 657 F.2d 189 (8th Cir.1981) (pro se brief·on direct appeal); *Chin v. United States,* 622 F.2d 1090 (2d Cir.1980), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 353 (1981); *Hardy v. United States,* 127 U.S. App.D.C. 162, 381 F.2d 941 (1967); 3 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE (Crim.2d) § 593 (1982).[5] The doctrine is dispositive of the appeal before us.[6] Therefore, we affirm the trial court's denial of the § 23–110 motion.

## I

Doepel's first argument goes to the issue of intoxication and its effect on his ability to premeditate and deliberate. At his trial, without conceding or denying that the occurrence underlying the charges had taken place, Doepel relied on the defense of "pathological intoxication," a rare type of temporary insanity associated with drinking. The assertion was that because of this disorder, "he lacked the mens rea requisite to such intentional crimes as deliberate murder and rape." *Doepel, supra,* 434 A.2d at 454. Alleged errors relating to the presentation of Doepel's case formed the focus of the direct appeal.

With the appeal thus focused upon Doepel's mental state with respect to first-degree murder, the decision of this court opened with an extensive recitation and examination of the evidence. In discussing Doepel's confession, which he had unsuccessfully attempted to suppress, specific mention was made of the consumption of alcoholic beverages, including the need to replenish the liquor supply at one point with beer and a bottle of rum. 434 A.2d at 452.[7] After recounting the actual circumstances of the killing, the court concluded:

> [I]t is apparent that appellant himself supplied sufficient evidence to justify the verdict of guilty on the court's charging him with first-degree murder—a crime defined in D.C.Code 1973, § 22–2401, as killing "another purposely ... of deliberate and premeditated malice." We refer to his admission that he had not only

---

murder conviction." (Emphasis in original.) Individual counsel handling the instant appeal are different from individual counsel handling the direct appeal but all were affiliated with the same law firm. We are not called upon to decide whether different counsel should have handled the instant proceeding or whether there possibly was ineffective assistance of counsel on the direct appeal.

**4.** Indeed, a procedural rule prohibiting collateral attacks based on an issue that could have been but was not raised on direct appeal does not appear to violate due process even where constitutional issues are at stake. *See e.g., Jackson v. Virginia, supra,* 443 U.S. at 311 n. 4, 99 S.Ct. at 2785 n. 4 (Virginia law); *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 2906 n. 5, 82 L.Ed.2d 1 (1984) (N.C. law). *Cf. Head v. United States,* 489 A.2d 450 (D.C.1985).

**5.** These cases arose under 28 U.S.C. § 2255, to which D.C.Code § 23–110 is "nearly identical and functionally equivalent"; therefore, we may rely on cases construing the federal rule. *Butler v. United States,* 388 A.2d 883, 886 n. 5 (D.C. 1978). Sometimes the issue is phrased as one of trial court discretion. *See, e.g., Kaufman v. United States,* 394 U.S. 217, 227 n. 8, 89 S.Ct.

1068, 1074 n. 8, 22 L.Ed.2d 227 (1969); *United States v. Orejuela,* 639 F.2d 1055, 1057 (3d Cir. 1981).

**6.** Because of our disposition of the appeal on this ground, we need not take up the thorny issue of the effect of a failure to raise a constitutional issue on direct appeal on a defendant's ability to raise the issue on collateral attack. Doepel would have us apply the "deliberate bypass" test applied to a 28 U.S.C. § 2255 action in *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). The government, citing our decision in *Head v. United States,* 489 A.2d 450 (1985), and *Norris v. United States,* 687 F.2d 899 (7th Cir.1982) would have us apply the "cause and prejudice" test. *Cf. Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). In *Atkinson v. United States,* 366 A.2d 450 (D.C. 1976), we summarily refused to hear a claim of insufficiency of the evidence raised on collateral attack where the conviction had been affirmed on appeal (even though such a claim had not been then raised).

**7.** A little further along, the court characterized the occasion as an "extended afternoon of dancing and drinking." 434 A.2d at 453.

choked his victim with his hand, but had also made sure that in advance of leaving the premises, she was dead—an objective attained by going to another room, bringing back an electric cord and wrapping it around her neck until he was certain of fatal strangulation.

While some appreciable time for reflection is required to demonstrate the element of premeditation, such interval need not be long, if the circumstances reveal that the killing was the product of some deliberation rather than the senseless act of a mind abandoned to "impulse, passion, or frenzy."

*Id.* at 453.

■ Thus, it seems plain to us that when the court determined on the prior appeal that there was "sufficient evidence" to support the first degree murder conviction,[8] it addressed the issue of deliberation and premeditation alert to the importance of the intoxication issue.[9] Having done so once, we decline in the absence of special circumstances to visit the issue anew. *Cf. (Curtis) Watson v. United States*, 508 A.2d 75 (D.C.1986).

## II

Doepel's second challenge is to the lack of evidence of forcible intercourse. This issue also had in fact been the subject of this court's prior attention in disposing of Doepel's appeal of the 1978 order denying a new trial. At issue there was the possible false testimony at Doepel's trial by an FBI expert with respect to blood stains found on the victim's clothing and on the undershorts Doepel was wearing on the

night of his arrest—two days after the killing. Subsequent to the trial, it was discovered that in certain reports of blood analyses the expert had in fact made no laboratory tests or had ignored or distorted the test results. Therefore, the FBI retested all the objects which the expert had told the Doepel jury contained human blood—a green towel, housecoat, gown, and the undershorts. Except for the fourth item, blood stains were confirmed. Because the portion of the undershorts containing the stains had been cut out (presumably for the prior laboratory test), the presence of blood could not be confirmed on the undershorts.

In the prior opinion,[10] this court stated:

As for materiality, the testimony concerning the undershorts had only the most meagre probative value.... In retrospect, it would appear that the prosecution overtried the case when it presented this garment over the objection of counsel. Chemical tests with respect to other minutiae, the condition of the body, and other circumstantial evidence were sufficient to show that the disarray of the living room pointed to a forcible sexual encounter—not simply a struggle for life.

*Doepel, supra,* 434 A.2d at 461.

In this analysis, the court was confirming the observation made in the prior portion of the opinion which set forth in detail the facts surrounding the conviction. After noting that the appellant's confession itself did not constitute evidence of rape, the court had gone on to say:

To sustain these counts of the indictment [rape and felony murder], the govern-

---

**8.** On this appeal, Doepel argues that the court was in error in believing the cord was in another room. Whether this was so or not is irrelevant; the facts stated allowed sufficient time for premeditation and deliberation. *See (Mark) Watson v. United States,* 501 A.2d 791 (D.C. 1985).

**9.** Doepel's brief on the direct appeal specifically discussed this common law rule on intoxication as a defense in his argument about the omission of an instruction on diminished mental state. The trial court had given a diminished capacity

instruction with respect to the evidence of intoxication.

**10.** The court was focusing on two of the prerequisites to the grant of a new trial on account of newly discovered evidence: materiality and the probability of acquittal on a new trial. *Heard v. United States,* 245 A.2d 125 (D.C.1968). Both of these factors necessitate consideration of the nature of the evidence and the strength of the government's case. *See, e.g., Woody v. United States,* 369 A.2d 592, 594 (D.C.1977).

ment presented extensive testimony to demonstrate that appellant had resorted to force in accomplishing his sexual purposes. Some of this evidence was gruesome. It included not only photographs, but physical descriptions of the decedent's body, with blood coming from the mouth, and of a liquid substance medically analyzed as sperm or prostate gland secretion in the vagina, anus, and mouth. Also introduced as exhibits were decedent's dentures, pubic hair samples, and appellant's undershorts containing a stain, identified by an expert witness as congealed human blood.

434 A.2d at 453.

█ Thus, in the prior appeal, the court necessarily focused upon the key issue now attempted to be raised again, namely, the question of proof of forcible intercourse. As with intoxication, we decline to visit this issue anew.

The order appealed from is affirmed.