John HARDY, Appellant,

v.

UNITED STATES, Appellee.

No. 07–CO–618.

District of Columbia Court of Appeals.

Argued Oct. 6, 2009.
Decided Feb. 4, 2010.
As Amended Feb. 25, 2010.*

---

* This opinion was issued originally on February 4, 2010. Appellants asked that the last sentence on page 30 be modified. It now consists of three sentences which read: "Despite his persistent efforts, Mr. Hardy has never obtained a ruling on the merits of his ineffective assistance of counsel claim. Allowing his 2006 Motion to proceed will not result in an 'improper use of judicial machinery.' Id. at 750 (citation omitted). Rather, it will foster an appropriate use of judicial process." This opinion is being reissued in an amended form.

Sloan S.J. Johnston, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Stratton C. Strand, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III, Elizabeth Trosman, and Sherri L. Berthrong, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and THOMPSON, Associate Judges, and KING, Senior Judge.

REID, Associate Judge:

This case has a long, unique, and convoluted history. Approximately fifteen years ago, appellant John Hardy was convicted by a jury of several felony charges that arose from a shooting incident. Mr. Hardy believed the performance of his court-appointed trial attorney was inadequate; he therefore retained new counsel for his appeal. Although his retained appellate counsel accepted payment and knew that Mr. Hardy wished to claim ineffective assistance of trial counsel, she inexplicably abandoned his appeal without ever entering an appearance. Consequently, Mr. Hardy's trial attorney drafted the appellate brief which, of course, lacked any reference to ineffective assistance of trial counsel.[1] We affirmed Mr. Hardy's judgment of conviction in 1996, in an unpublished Memorandum Opinion and Judgment.[2]

1. Subsequently, Mr. Hardy's retained counsel, Retna M. Pullings, was suspended from the practice of law in 1999. *See In re Pullings,* 724 A.2d 600 (D.C.1999). She was disbarred in 2000, by consent, after she entered a guilty plea in a criminal matter in federal court. *See In re Pullings,* 753 A.2d 1013 (D.C.2000). This court disbarred Mr. Hardy's trial and appellate counsel, Shola E. Ayeni, in 2003, based on ethical violations in three client matters. *See In re Ayeni,* 822 A.2d 420 (D.C. 2003).

2. *Hardy v. United States,* No. 95–CF–266, 686 A.2d 1061 (D.C.1996).

During 2000 and 2001, Mr. Hardy wrote letters and filed *pro se* motions in an attempt to bring his ineffective assistance claim to light. His *pro se* efforts were unsuccessful; however, the Public Defender Service ("PDS") agreed to represent him. Beginning in 2002, PDS filed several motions and petitions with different courts—the Supreme Court, this court and the trial court—seeking to effectuate Mr. Hardy's ineffective assistance claim. The instant appeal is from the denial of his 2006 motion to vacate convictions ("2006 Motion"), filed pursuant to D.C.Code § 23-110 (2001). Based upon our review of the record and applicable legal principles, we are constrained to vacate the order of the motions court denying Mr. Hardy's 2006 Motion and to remand this case to the trial court, with instructions to hold an evidentiary hearing on the merits of Mr. Hardy's 2006 Motion for the purpose of determining whether a new trial is required because of ineffective assistance of trial counsel.

## FACTUAL SUMMARY

### Mr. Hardy's Conviction and Direct Appeal

The record before us reveals that in October 1994, a jury found Mr. Hardy guilty of assault with intent to murder while armed, aggravated assault while armed, carrying a pistol without a license, and two counts of possession of a firearm during a crime of violence. Because Mr. Hardy believed the performance of his court-appointed trial counsel, Mr. Ayeni, was ineffective, Mr. Hardy's grandmother hired Ms. Pullings to represent him on appeal. Ms. Pullings accepted $1500 in fees but never entered her appearance in the appellate proceeding.[3] Mr. Ayeni, therefore, filed Mr. Hardy's appellate brief.[4] Not surprisingly, the brief did not include a claim of ineffective assistance of trial counsel.[5] We affirmed Mr. Hardy's conviction. *See* note 2, *supra*. On July 22, 1999, Mr. Hardy sent a letter to the "Clerk of the Court; Court of Appeals for the District of Columbia," with a motion to the "United States Court of Appeals for the District of Columbia" "to allow reconsideration of the appeals case with different appeals counsel." This communication, which was received by this court on August 5, 1999, focused on the alleged misconduct of Ms. Pullings and her inadequate representation, and it asserted that "justice can only be served by allowing competent appeals counsel to revisit and file the defendant['s] appeals issue before

3. On February 11, 1999, this court imposed on Ms. Pullings disciplinary sanctions for neglecting three clients—one of whom was Mr. Hardy. *In re Pullings*, *supra* note 1, 724 A.2d at 600. Ms. Pullings' sanction included a stayed sixty-day suspension and one year of conditional probation—one condition was full restitution of the $1500 paid by Mr. Hardy's grandmother. *Id.*

4. In October 1996, Mr. Hardy sent a letter to Judge Paul Webber—the trial judge—requesting removal of Mr. Ayeni as his appellate counsel. His letter was forwarded to this court; our Clerk mailed a copy of Mr. Hardy's letter to Mr. Ayeni and directed him to notify the court in writing as to whether the matter had been resolved. The record does not indicate any response from Mr. Ayeni.

5. Mr. Ayeni was disbarred May 1, 2003 for misconduct including, reckless or intentional misappropriation of client funds and submitting a Criminal Justice Act voucher for a plagiarized appellate brief. *In re Ayeni*, *supra* note 1, 822 A.2d at 421–22. *See also Agnew v. United States*, 813 A.2d 192, 193 n. 1 (D.C. 2002) (discussing Mr. Ayeni's plagiarized brief). A federal jury later found Mr. Ayeni guilty of "participat[ing] in a scheme to submit fraudulent vouchers to the District of Columbia Superior Court: [Mr.] Ayeni signed out numerous vouchers without reporting any lost or stolen and his wife redeemed several vouchers during the relevant time." *United States v. Ayeni*, 304 F.Appx. 873, 874, 2008 U.S.App. Lexis 23970, at **1–2 (D.C.Cir. Nov. 19, 2008) (affirming the jury's verdict).

the court." A docket sheet shows that the communication was "construed as a motion to recall mandate" and denied on October 19, 1999, without explanation.

A few months later, on November 29, 1999, this court received from Mr. Hardy a "Motion by Person in Custody to Reappeal Case." This handwritten, three-page motion primarily summarized the failings of Ms. Pullings, the filing of the appellate brief by his trial counsel even though Mr. Hardy desired to "raise the trial counsel's ineffectiveness," and the prejudice to Mr. Hardy. He ended the motion by "respectfully request[ing] that this trial be reappealed." We issued an Order on January 3, 2000, which stated only: "On consideration of the motion of *pro se* appellant to reappeal case, it is ORDERED that the motion is denied."

### Mr. Hardy's Pro Se "Motion for Trial Transcripts" and His June 6, 2000 Letter

In early March 2000, Mr. Hardy filed a handwritten *pro se* "Motion for Trial Transcripts" with a supporting memorandum of point and authorities, a declaration and a certificate of service. In these papers, Mr. Hardy explained how his grandmother had hired Ms. Pullings as appellate counsel and asserted that Ms. Pullings knew he wanted to file an ineffective assistance of counsel claim against Mr. Ayeni. Further, Mr. Hardy stated that Ms. Pullings accepted his grandmother's money but failed to appear and subsequently was formally reprimanded for abandoning his case. Ms. Pullings' abandonment, Mr. Hardy wrote, "left his appeal in the hands of the very attorney [Mr. Ayeni] about whom he wished to file [an] ineffective [assistance claim]." He described himself as a "destitute prisoner" entitled to the transcripts under case law, and he detailed his unsuc-

cessful attempts to obtain copies from Mr. Ayeni. Without the transcripts, Mr. Hardy explained, "[he was] unable to file a D.C.Code § 23–110 remedy to vacate, set aside conviction on numbers [sic] of ineffective assistance [of] trial counsel." He, therefore, requested that the court order his former counsel to "relinquish all available trial transcripts," and he asked the court to "appoint counsel [for him] ... pursuant to D.C.Code [§ ]23–110 *et seq.*"

The motions judge denied Mr. Hardy's motion on March 29, 2000.[6] In her Order, the judge summarily mentioned the motion's content, noted Mr. Hardy's statement "that he is in need of his pre-trial transcripts so that he can file a 23–110 motion alleging ineffective assistance of counsel," and stated the following reason for denying the request for transcripts and the appointment of counsel:

> Defendant's non-specific, "kitchen-sink" claim is too general to warrant any relief. His failure to assert a more specific claim does not justify appointment of counsel or the preparation of transcripts at further government expense.

The judge also revealed that her law clerk had contacted Mr. Ayeni.[7]

On June 16, 2000, the motions judge received a letter from Mr. Hardy, dated June 6, 2000 (the "Letter"). In the Letter, Mr. Hardy complained that Mr. Ayeni neither interviewed nor put "important witnesses on the stand." He also stated that Mr. Ayeni ignored his desire to accept a plea bargain that would have resulted in a conviction for only the charge of assault with intent to murder, and he asserted that "[Mr. Ayeni] told [him he, Mr. Hardy,] was [ ] young and ignorant to the law and let him handle it." Further, Mr. Har-

---

6. Due to Judge Webber's retirement, Mr. Hardy's correspondence was referred to the judge in this matter.

7. The judge's law clerk inquired "whether [Mr. Ayeni] still had the transcripts from defendant's trial." He did not.

dy discussed Ms. Pullings' misconduct as his appellate counsel, the resulting appellate representation of Mr. Ayeni, and Ms. Pullings' disciplinary sanction. He asked the judge not to "look at [his] claim as being 'kitchen-sink' [ ] or too general to warrant [him] any relief," and implored her to "please hear [his] cries." Mr. Hardy ended the Letter by saying:

> I sincerely hope that you would look into some of the issues I've presented in this letter because as "God" as my witness, "they are the truth." I also hope I'm not putting a burden on your shoulders but honestly I don't know where else to turn. So please help me.

In an Order issued July 7, 2000, the motions judge interpreted the Letter "as a *pro se* Motion for Ineffective Assistance of Counsel" under D.C.Code § 23–110 and denied the motion. She acknowledged Mr. Hardy's account of Mr. Ayeni's performance and noted that Mr. Hardy "recently filed a *pro se* Motion for Trial Transcripts essentially arguing the same points as those expressed in the pending motion." In a footnote, she explained that the Superior Court lacks jurisdiction over a claim of ineffective assistance against Ms. Pullings as appellate counsel. In addition, the judge discussed the presumption of a hearing before ruling on a § 23–110 claim, but she determined that no hearing was required because Mr. Hardy's claim was "vague and conclusory." [8]

***Mr. Hardy's January 2001 Pro Se Motion and PDS' Appearance as His Counsel***

On July 20, 2000, the Chief Judge of this court received a letter from Mr. Hardy. In it, Mr. Hardy recounted how Ms. Pullings' abandonment of his case resulted in Mr. Ayeni handling his direct appeal, summarized the ineffective assistance claim he desired to file against Mr. Ayeni, and declared that he "[did not] know where else to turn" for help on his appellate-counsel ineffective assistance claim. The Chief Judge sent Mr. Hardy's letter to the Clerk's Office; in turn, the Clerk referred Mr. Hardy's case to the Appellate Division of PDS.

On January 29, 2001, while PDS was reviewing Mr. Hardy's case prior to deciding whether to represent him, Mr. Hardy filed a *pro se* "Motion to Vacate, Correct, or Set–Aside Sentence Pursuant to D.C. Title 23:110[sic]" ("2001 Motion"). Citing *United States v. McLaughlin*, 334 U.S.App.D.C. 1, 164 F.3d 1 (1998), Mr. Hardy alleged a violation of his Sixth Amendment right to effective assistance of counsel because Mr. Ayeni failed to raise the issue of the merger of his convictions for assault with intent to murder while armed and aggravated assault while armed. The government responded that *McLaughlin* was inapposite because it did not bind the court and that this court's opinion in *Nixon v. United States*, 730 A.2d 145 (D.C.), *cert. denied*, 528 U.S. 899, 120 S.Ct. 233, 145 L.Ed.2d 196 (1999), controlled.

The motions judge denied Mr. Hardy's January 2001 *pro se* Motion in an Order issued March 21, 2001. The Order stated that, "as a preliminary matter," Mr. Hardy's motion did not warrant a hearing "because [his] assertion would not merit relief even if true and the motion can be resolved by reviewing the available record." The judge then declared the motion barred procedurally "because [Mr. Hardy] did not raise his double jeopardy claim in his first § 23–110 motion nor did he raise it on direct appeal." She concluded that

---

8. Citing *Ready v. United States*, 620 A.2d 233, 234 (D.C.1993), the motions judge stated:

> However, there is no need for a [§ 23–110] hearing where (1) the claims are vague and conclusory; (2) the claims are palpably incredible; (3) the assertion would not merit relief even if true; or (4) the motion can be resolved on the available record.

Mr. Hardy did not satisfy the exception to the procedural bar because he demonstrated neither "cause excusing his failure to raise the issue timely" nor "actual prejudice regarding the errors of which he complains." This Order also denied the 2001 Motion on the merits. After noting that *McLaughlin* did not bind the court, the motions judge applied the *Blockburger*[9] test and determined that the crimes in issue did not merge. Specifically, she noted that each crime required proof of an element that the other did not—"specific intent" for assault with intent to murder while armed, and "serious bodily injury" for aggravated assault while armed. She thus concluded:

> The Court finds that [Mr. Hardy's] motion is without merit. [His] convictions did not violate the Double Jeopardy Clause, therefore [Mr. Hardy's] counsel was not ineffective for failing to object to his convictions. The Court finds no basis to grant the relief requested.

Because he was transferred to another prison, Mr. Hardy did not receive a copy of the March 21, 2001 Order until July 11. He noticed an appeal on July 19. On September 13, this court dismissed his appeal as untimely, but did so without prejudice in order for Mr. Hardy to seek relief under Super. Ct. Civ. R. 60(b). On March 20, 2002, Mr. Hardy filed a motion for relief under Rule 60(b). The government did not oppose. On April 8, 2002, the motions judge granted the Rule 60(b) motion, and she vacated and re-entered the judgment. Mr. Hardy noticed an appeal less than ten days later.

Simultaneous with Mr. Hardy's appellate brief pertaining to the March 21, 2001 Order of the motions judge, on April 25, 2003, PDS filed a "Motion to Recall the Mandate" relating to Mr. Hardy's direct appeal. The 54–page motion detailed the alleged deficiencies of Mr. Ayeni both as trial and appellate counsel, including the failure to present "any discernible defense" and the failure to present "meritorious claims" on appeal. The government opposed the recall both on procedural grounds and on the merits, lodging a 48–page opposition.[10] We denied the motion to recall the mandate in a *per curiam* Order which read, in its entirety: "On consideration of appellant's motion to recall the mandate and appellee's opposition thereto, it is ORDERED that appellant's motion to recall the mandate is denied." In an unpublished Memorandum Opinion and Judgment, we affirmed the trial court's Order that had denied Mr. Hardy's *pro se* 2001 Motion. Despite a federal court decision that held that the charges of aggravated assault while armed and assault with intent to murder while armed merged, we explained that we were bound by a precedent in this jurisdiction concluding that the two crimes did not merge. *Hardy v. United States*, No. 02–CO–441, 841 A.2d 8 (D.C.2003). Mr. Hardy petitioned for *en banc* review and for a writ of certiorari with the Supreme Court. Both were denied.

### Mr. Hardy's 2006 Motion to Vacate Convictions and the Instant Appeal

After the Supreme Court denied Mr. Hardy's petition for writ of certiorari, he filed a "Motion to Vacate Convictions Pur-

---

**9.** *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ("The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision

requires proof of a fact which the other does not.").

**10.** This filing was not initially included in the record before this court; PDS supplied a copy after oral argument.

suant to D.C.Code § 23–110" on September 8, 2006 ("2006 Motion"). Along with pointing out numerous shortcomings of Mr. Ayeni's representation and the impact of Mr. Ayeni's misconduct on his appeal, Mr. Hardy argued that the 2006 Motion was not barred by the *Shepard* rule [11] because Mr. Ayeni represented Mr. Hardy both at trial and on appeal. Mr. Hardy also contended that under *Castro v. United States*, 540 U.S. 375, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003)—a case involving § 23–110's federal analog, 28 U.S.C. § 2255—the motions judge should have informed Mr. Hardy of her intent to construe the Letter as a § 23–110 motion and warned of the consequences before she re-characterized it as such. Further, due to the obstacles Mr. Hardy had to overcome and the prejudice he would suffer, he contended that the 2006 Motion should not be dismissed as successive.

In its Opposition, the government did not address the merits of Mr. Hardy's ineffective assistance claim. Rather, it focused only on the procedural bars to the 2006 Motion. The government insisted that the motions judge properly re-characterized the Letter as a § 23–110 motion because this court, in *Graham v. United States*, 895 A.2d 305 (D.C.2006), rejected *Castro* as inapposite to claims under the District's statute. The government further contended that (1) the motion was barred as a successive collateral attack because "[Mr. Hardy] previously claimed in his two prior *pro se* 23–110 motions filed in 2000 and 2001 that his trial counsel was ineffective"; and (2) the motion should be denied as an abuse of writ because Mr. Hardy did not "show[ ] both cause for his failure to raise his claim [earlier] and re-

sulting prejudice." In addition, the government maintained that the Superior Court lacks jurisdiction to entertain any claims regarding the ineffectiveness of appellate counsel—a claim properly addressed "by filing a motion to recall the mandate in the direct appeal."

In his Reply Brief, Mr. Hardy took issue with the government's interpretation of *Graham's* discussion of *Castro*, asserting that *Graham* dealt with "an entirely different scenario" than the one presented by the Letter, and that the characteristics of the Letter distinguished it from a motion. To illustrate his assertion that the trial court should have given him *Castro* warnings, Mr. Hardy highlighted *People v. Shellstrom*, 216 Ill.2d 45, 295 Ill.Dec. 657, 833 N.E.2d 863 (2005), which held *Castro* warnings are required prior to re-characterizing a post-conviction *pro se* pleading. Finally, Mr. Hardy contended that his 2006 Motion was not successive because "it [did] not raise identical claims to those made in the [L]etter," and he claimed that the "ends of justice require[d] that [the] motion be decided on the merits."

On May 10, 2007, the motions judge issued an Order denying the 2006 Motion "[f]or the reasons stated in the government's Opposition." Mr. Hardy filed a notice of appeal.

## ANALYSIS

Mr. Hardy challenges the motions court's denial of his 2006 Motion. He claims that neither his June 2000 Letter nor his *pro se* 2001 Motion serves as a procedural bar to his 2006 Motion, because the Letter "was not a motion of any kind, let alone a motion to vacate judgment un-

---

**11.** *Shepard v. United States*, 533 A.2d 1278, 1280 (D.C.1987) (holding that "if an appellant does not raise a claim of ineffective assistance of counsel during the pendency of the direct appeal, when at that time appellant demon-

strably knew or should have known of the grounds for alleging counsel's ineffectiveness, that procedural default will be a barrier to this court's consideration of appellant's claim").

der [D.C.Code] § 23–110"; the trial court failed to warn him of its decision to recharacterize his Letter as a § 23–110 motion; and his 2001 Motion is properly characterized as a Super. Ct.Crim. R. 35(a) motion to correct an illegal sentence. Furthermore, Mr. Hardy contends that

Should the [c]ourt agree with the government's claims that either the June 6, 2000 letter or the January 29, 2001, motion poses a procedural bar, it should nonetheless require the trial court to entertain the merits of Mr. Hardy's counseled [§ ]23–110 motion because under the extraordinary facts of this case, Mr. Hardy can demonstrate both cause and prejudice in not bringing his claims earlier, as he was both uncounseled and without a trial transcript when he executed the previous documents that the government now claims pose a procedural bar.

The "cause" requirement has been met, Mr. Hardy asserts, not only because he was "uncounseled" and "without a trial transcript," but also because "[t]he combination of a conflicted attorney (Mr. Ayeni) and an attorney who this [c]ourt found to have committed malpractice (Ms. Pullings) resulted in constitutionally deficient representation on direct appeal."

The government argues that Mr. Hardy "is judicially estopped from seeking relief . . . based on an assertion that his 2001 Motion was not a § 23–110 motion [since] [h]e took the contrary position . . . in his March 20, 2002, 'Motion to Vacate Judgment Pursuant to Superior Court Civil Rule 60(b) to Permit Timely Filing of a Notice of Appeal.'" For different reasons, including our decision in *Graham, supra,* the government contends that Mr. Hardy's June 2000 Letter "properly counted as a prior [§ ]23–110 motion." The government further regards Mr. Hardy's 2006 Motion as either successive or abusive, requiring a showing of cause for his procedural failure to raise his claims in his 2000

or 2001 motions. And, the government contends that Mr. Hardy not only must litigate a claim of ineffective assistance of appellate counsel through a motion to recall the mandate, but that he previously filed three motions to recall the mandate—*pro se* motions in July and November 1999, and PDS' motion in April 2003—all of which were denied.

### *Applicable Legal Principles*

■■ We turn now to the legal principles which will guide our analysis. "[G]enerally speaking there is no constitutional right to appointment of counsel to develop and pursue post-conviction relief." *Jenkins v. United States,* 548 A.2d 102, 104 (D.C.1988) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)). "Nor is there commonly a statutory basis entitling a criminal defendant whose conviction has been affirmed on direct appeal to have counsel appointed to pursue collateral relief." *Id.* (citing *Johnson v. Avery,* 393 U.S. 483, 488, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)). Nevertheless, in our jurisdiction an attorney appointed by the court to represent an indigent defendant has the statutory duty, under the District of Columbia Criminal Justice Act, to represent the defendant "at every stage of the proceedings from such person's initial appearance before the court through appeals, including ancillary matters appropriate to the proceedings." D.C.Code § 11–2603 (2001). In that regard, "an inherent part of counsel's responsibility on direct appeal is to consider whether the client's interests require the filing of a motion under [D.C.Code] § 23–110 based on ineffectiveness of counsel." *Doe v. United States,* 583 A.2d 670, 674 (D.C.1990); *see also In re R.E.S.,* 978 A.2d 182, 190–91 (D.C. 2009); *Williams v. United States,* 783 A.2d 598, 601–02 (D.C.2001) (en banc).

■ Counsel's responsibility involves "mak[ing] reasonable inquiry into the possibility of ineffective assistance of counsel at trial by researching and developing points thus uncovered that might give rise to a claim of ineffectiveness." *Doe, supra,* 583 A.2d at 675. Moreover, "[i]f, after completing such an inquiry and any indicated research, appellate counsel concludes that there exists an adequate basis for advancing a claim of ineffective assistance of trial counsel, appellate counsel should advise appellant of the results of the inquiry," and should file "a § 23–110 motion accompanied by a request by appellant to the Superior Court for it to appoint appellate counsel or other counsel as § 23–110 counsel." *Id.*

■ If appellate counsel fails to fulfill his or her statutory duty as appointed counsel, and " 'if an appellant does not raise a claim of ineffective assistance of counsel during the pendency of the direct appeal, when at that time appellant demonstrably knew or should have known of the grounds for alleging counsel's ineffectiveness, that procedural default will be a barrier to this court's consideration of appellant's claim.' " *Pearsall v. United States,* 859 A.2d 634, 639 (D.C.2004) (quoting *Doe, supra,* 583 A.2d at 674); *see also Shepard, supra* note 12, 533 A.2d at 1280. Failure to raise the issue of ineffectiveness of trial counsel during the pendency of the direct appeal does not constitute procedural default, however, where the appellant "was represented on direct appeal by the same counsel that represented him at trial," because "[i]t would be a conflict of interest for a lawyer to appeal a ruling premised on the lawyer's own ineffective-

ness." *Little v. United States,* 748 A.2d 920, 923 (D.C.2000) (internal quotation marks and citations omitted).

■ Generally, under the case law of § 23–110 and its federal analog, 28 U.S.C. § 2255, a successive motion and an "abuse of the writ" are procedurally barred "unless there was cause for the delay and prejudice resulting from failure to consider the motion." *McCrimmon v. United States,* 853 A.2d 154, 159 (D.C.2004). "A successive motion is identical to the first motion; an abuse of writ alleges a new ground." *Junior v. United States,* 634 A.2d 411, 417 n. 15 (D.C.1993) (citing *McCleskey v. Zant,* 499 U.S. 467, 486, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991));[12] *see also Bradley v. United States,* 881 A.2d 640, 645 (D.C.2005) ("A motion is 'successive' if it raises claims identical to those raised and denied on the merits in a prior motion."); *Thomas v. United States,* 772 A.2d 818, 824 (D.C.2001) (noting that "the 'abuse of writ' doctrine precludes" a second or subsequent motion raising "claims not raised, and thus defaulted, in the first [collateral] proceeding") (internal quotation marks and citation omitted; alteration in original). " '[This] procedural default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments.' " *McCrimmon, supra,* 853 A.2d at 160 (D.C.2004) (quoting *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003)). Furthermore, "[t]he procedural default articulated in *Shepard* and other cases is not insurmountable. To establish legally sufficient

12. What constitutes an "abuse of writ" is not always clear. As *McCleskey* indicates, "the doctrine of abuse of the writ refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions." 499 U.S. at 489, 111 S.Ct. 1454. Abuse of writ has been defined as "deliberate abandonment" of a claim, and failure "to raise a claim through inexcusable neglect." *Id.*

'cause' for his failure to raise a claim on direct appeal, however, appellant must show (if he can) that he 'was prevented by exceptional circumstances' from raising the claim at the appropriate time." *Washington v. United States,* 834 A.2d 899, 903 (D.C.2003) (citing *Head v. United States,* 489 A.2d 450, 451 (D.C.1985) (citation omitted)).

■■■■ Once a § 23–110 motion has been filed, "there is a presumption in favor of holding a hearing . . . ." *Little, supra,* 748 A.2d at 922 (citing *Ready v. United States,* 620 A.2d 233, 234 (D.C.1993)); *see also Pettaway v. United States,* 390 A.2d 981, 984 (D.C.1978). Generally, the decision regarding whether a hearing is required lies within the "sound discretion of the trial court." *Id.* We "will affirm the trial court's denial of a § 23–110 motion without a hearing only if the claims (1) are palpably incredible; (2) are vague and conclusory; or (3) even if true, do not entitle the movant to relief." *Jones v. United States,* 918 A.2d 389, 403 (D.C.2007) (citing *Newman v. United States,* 705 A.2d 246, 261 (D.C.1997) (internal quotation marks and citation omitted)). "Furthermore, [i]n order to uphold the denial of a § 23–110 motion without a hearing, we must be satisfied that under no circumstances could the petitioner establish facts warranting relief." *Id.* (citing *Hilliard v. United States,* 879 A.2d 669, 671 (D.C.2005) (internal quotation marks omitted; alteration in original)). " '[A]ny question regarding the appropriateness of a hearing should be resolved in favor of holding a hearing.' " *Id.* (quoting *Newman, supra,* 705 A.2d at 261); *see also Steward v. United States,* 927 A.2d 1081, 1087 (D.C.2007).

■■■■ If an appellant claims ineffectiveness of appellate counsel, that issue "must be litigated as an independent claim, which requires a recall of the mandate of the direct appeal." *Wu v. United States,* 798 A.2d 1083, 1091 (D.C.2002) (citing *Mayfield v. United States,* 659 A.2d 1249, 1252–53 (D.C.1995)). As we said in *Head v. United States,* 626 A.2d 1382 (D.C.1993), "[s]uccess on an ineffective assistance of appellate counsel claim entails three steps[:]"

> First, the appellant must file a motion with the court to recall the mandate. Second, a motions division must decide whether or not to grant the motion on the basis that the claim "initially has been found by the court to have sufficient merit." Third, if the division finds such merit in the claim, then by granting the motion to recall the mandate, the direct appeal is revived and the court will proceed to determine whether or not the appellant was denied the effective assistance of appellate counsel.

*Id.* at 1384 (citation omitted). However, an "[a]ppellant cannot use [a subsequent] appeal to relitigate issues that the court has previously resolved against him." *Id.* at 1385 (citing *Doepel v. United States,* 510 A.2d 1044, 1045–46 (D.C.1986)). Thus, "[u]nless the purported appeal from the denial of the motion to recall the mandate is properly before the court, the court is not in a position to consider the ineffective assistance of appellate counsel claim." *Id.*

We now turn to an application of the legal principles to the arguments presented on appeal.

### The Motions to Recall the Mandate

■■■■ Mr. Hardy's two *pro se* communications in 1999, following our disposition of his direct appeal, in essence sought an opportunity both to revive his direct appeal by having it filed by competent appellate counsel, and to raise and litigate the alleged ineffective assistance of his trial counsel. The government views the 1999 filings and this court's denial of relief as a bar to Mr. Hardy's 2006 Motion under D.C.Code § 23–110. In addition, the extensive 2003 Motion to Recall Mandate (or "2003 Motion"), lodged on Mr. Hardy's

behalf by PDS, identified alleged deficiencies in the performance of Mr. Ayeni as both Mr. Hardy's trial and appellate counsel. The government vigorously opposed the 2003 Motion on procedural grounds and on the merits. Procedurally, the government argued that this court should not even reach the merits because (1) we denied Mr. Hardy's 1999 requests, (2) the motion was untimely without good cause, and (3) the motion set forth claims of trial counsel ineffectiveness that must first be adjudicated in Superior Court. Alternatively, the government insisted that should this court decide to reach the merits of Mr. Hardy's claims, "none of the five arguments [he] asserts that counsel should have raised on appeal would have resulted in a reversal of his conviction." Thus, the government maintained in the trial court, and reiterates on appeal, that our disposition of the 2003 Motion procedurally bars Mr. Hardy's 2006 Motion.

Significantly, if the claims of ineffective assistance of appellate counsel, set forth in a motion to recall the mandate, have been denied on their merits, an "[a]ppellant cannot use [a subsequent] appeal to relitigate issues that the court has previously resolved against him." *Head, supra,* 626 A.2d at 1384–85; *Mayfield, supra,* 659 A.2d at 1253. In light of the unique situation presented in this case, we are not convinced that our disposition of either Mr. Hardy's *pro se* 1999 filings, or of his 2003 Motion to Recall the Mandate, has erected a procedural bar to our consideration of his 2006 Motion.

In *Head,* we stated: "By denying [the appellant's] motion [to recall the mandate], the court found that it did not have sufficient merit." *Head, supra,* 626 A.2d at 1384 (citing *Watson v. United States,* 536

A.2d 1056, 1061 (D.C.1987) (en banc), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1740, 100 L.Ed.2d 203 (1988)); *see also Mayfield, supra,* 659 A.2d at 1252 (quoting *Head*). During oral argument in this case, the government asked us to declare that, as a general rule, any denial of a motion to recall the mandate is on the merits.

The context of our decision in *Head* was very different from that of the instant case. We issued the mandate in *Head* before D.C.App. R. 41 was amended to impose a 180–day time limitation on the filing of a motion to recall the mandate.[13] *Head, supra,* 626 A.2d at 1384 n. 3. The 180–day rule was in place, however, when Mr. Hardy sent his 1999 communications to the court, long after our 1996 unpublished Memorandum Opinion and Judgment affirming his conviction. Moreover, the specific facts of *Head* did not suggest any procedural barriers to the appellant's motion to recall the mandate. The *Head* court could therefore confidently say that "[b]y denying [the appellant's] motion, the court found that it did not have sufficient merit." *Id.* at 1384. Here, however, we have substantial doubt that the ruling on the 2003 Motion was on the merits. The government challenged Mr. Hardy's 2003 Motion on several procedural grounds, along with its attack on the merits. The court's denial was after consideration of both the "appellant's motion" and the "appellee's opposition." It is more likely that our one sentence denial of the 2003 Motion was premised on procedural grounds, rather than the result of any assessment of substantive issues raised by the motion. On this record and in this unique case, we conclude that neither the 1999 *pro se* documents, nor the 2003 Motion to Recall the Mandate serves as a procedural bar to Mr.

---

13. Rule 41 presently provides in pertinent part: "Any motion to recall the mandate must be filed within 180 days from issuance of the mandate." D.C.App. R. 41(f). The time limitation became part of the rule in 1985. *See Hines v. United States,* 547 A.2d 988, 989 (D.C.1988).

Hardy's 2006 Motion. We next examine whether Mr. Hardy's June 6, 2000 letter to the trial court constitutes a procedural bar to his 2006 Motion.

### Mr. Hardy's June 6, 2000 Letter to the Trial Court

■ The government regards Mr. Hardy's June 6, 2000 letter ("Letter") as a procedural bar to his 2006 Motion, but Mr. Hardy contends that it is not. Furthermore, the parties disagree as to whether the motions judge properly re-characterized the Letter as an ineffective assistance of counsel motion pursuant to D.C.Code § 23–110. When the Letter is viewed in the context of Mr. Hardy's earlier *pro se* Motion for Trial Transcripts, we are inclined to agree with Mr. Hardy that it is not properly characterized as a filing under § 23–110. Although the government maintains that Mr. Hardy did not challenge the re-characterization in the trial court, Mr. Hardy points to his reply to the government's opposition to his 2006 Motion which stated that the Letter "gave no indication that [he] intended to raise any particular claim at all," was "not styled as a motion," "did not mention D.C.Code § 23–110," "did not ask for any specific relief," and hence, "should not be a barrier to raising claims never considered by the [trial] court." We agree that this reference, in response to the government's argument in the trial court, questioned the trial court's re-characterization of Mr. Hardy's Letter as a motion under § 23–110.

Mr. Hardy's March 2000 *pro se* Motion for Trial Transcripts evidences his awareness of how to package a motion; he included not only the motion itself with specified relief requested, but also a "Memorandum of Points and Authorities," a declaration, and a certificate of service. In contrast, his handwritten Letter arrived as a single document and, despite the government's effort to demonstrate that it stated a "claim" and "sought relief," it clearly was written as a reaction to the trial court's denial of his request for trial transcripts needed to "file a D.C.Code § 23–110 remedy to vacate, set aside conviction." He highlighted the court's apparent rationale for denying his request for the trial transcripts and the appointment of counsel—"Defendant's non-specific, 'kitchen-sink' claim is too general to warrant any relief. His failure to assert a more specific claim does not justify appointment of counsel or the preparation of transcripts at further government expense." He directly addressed that rationale by asking the court not to "look at [his] claim as being 'kitchen-sink' [ ] or too general to warrant [him] any relief." His letter also contained a plea to "please hear [his] cries," expressed the "hope" that he was "not putting a burden on [the judge's] shoulders," and stated that he "honestly [did not] know where else to turn." We conclude that Mr. Hardy's Letter is not properly characterized as a motion filed under D.C.Code § 23–110, and hence, we deem it unnecessary to address the parties' arguments as to whether *Pettaway* applies to abusive motions, or whether the trial judge was required to give the *Castro* warnings before re-characterizing the Letter as a motion under § 23–110.[14]

14. Mr. Hardy points to language in *Pettaway, supra,* indicating that where a trial court's denial of a § 23–110 motion is on vagueness grounds, a "denial without a hearing is not a denial on the merits." 390 A.2d at 985 (internal quotation marks and citation omitted). *See also Sanders v. United States,* 373 U.S. 1, 16, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) ("[t]he prior denial [of a motion under the analogous federal statute, 28 U.S.C. § 2255,] must have rested on an adjudication of the merits of the ground presented in the subsequent application"). The government responds that *Pettaway* is not applicable to abusive motions. We do not address whether the 2000 Letter is an abuse of writ under *McCleskey* or other authorities. Nor do we consider

### *Mr. Hardy's January Pro Se 2001 Motion*

Mr. Hardy argues that his *"pro se* January 29, 2001 [Motion to Vacate, Correct or Set–Aside Sentence Pursuant to D.C. Title 23:110 ("2001 Motion")] also should not count as a first collateral attack made pursuant to § 23–110." While acknowledging that the caption referenced § 23–110 and the content briefly referred to ineffective assistance, Mr. Hardy insists that the gist of his 2001 Motion—a claim that two of his crimes merged—rendered it one to correct his sentence under Super. Ct.Crim. R. 35(a). Leaning heavily on *Brown v. United States,* 795 A.2d 56 (D.C. 2002), Mr. Hardy asserts that this court has commanded the liberal construction of *pro se* pleadings so that the motion is categorized by the relief sought rather than the caption used. He further insists that in denying his 2001 Motion, the motions judge actually treated it as one to correct an unlawful sentence. The government contends that Mr. Hardy is judicially estopped from arguing that the 2001 Motion was not a § 23–110 motion because he "took the contrary position" in 2002 when he moved the court to vacate judgment under Super. Ct. Civ. R. 60(b).

We agree with Mr. Hardy that under the peculiar circumstances of this case involving the *pro se* 2001 Motion and his unopposed Rule 60(b) motion, application of the doctrine of judicial estoppel is inappropriate. Judicial estoppel is an "equitable doctrine" invoked at a court's discretion to prevent "improper use of judicial machinery." *New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal quotation marks and citations omitted). "The purpose of applying this doctrine is 'to protect the integrity of the judicial process by prohibiting parties from deliberately changing position according to the exigencies of the moment.'" *Mason v. United States,* 956 A.2d 63, 66 (D.C.2008) (quoting *New Hampshire, supra,* 532 U.S. at 749–50, 121 S.Ct. 1808).

Generally, as we said in *Mason,* we consider three factors before deciding whether to apply judicial estoppel:

First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 66; *see also Prince Constr. Co. v. District of Columbia Contract Appeals Bd.,* 892 A.2d 380, 386 (D.C.2006) (referencing *Lassiter v. District of Columbia,* 447 A.2d 456, 461 (D.C.1982) ("plaintiff in civil action judicially estopped from testifying in manner contrary to his previous testimony as respondent in juvenile proceeding")).

*Mason, Prince,* and *New Hampshire* provide insight into when judicial estoppel is warranted. The appellant in *Mason*—a Jamaican immigrant—sought to withdraw a nine-year-old guilty plea on the grounds that he had not been alerted of the risk of deportation. 956 A.2d at 65. On appeal, he argued that the trial court erred by failing to inform him, as required by statute, of possible deportation if he entered a guilty plea. *Id.* During the plea colloquy,

whether our decision in *Graham, supra,* indicates that *Castro* warnings are not required before a trial court may re-characterize a communication (such as a letter) from a prisoner as a motion pursuant to D.C.Code § 23–110.

however, the appellant had told the trial court, under oath, that he was a United States Citizen. *Id.* This court applied the doctrine of judicial estoppel, concluding that "Mason's current position that he is an alien is directly contrary to his testimony at the plea hearing that he was a United States citizen." *Id.* at 66–67. In reaching this conclusion, we considered the three factors in *New Hampshire:*

(1) "Mason's current position that he is an alien is directly contrary to his testimony at the plea hearing that he was a United States citizen";

(2) "[a]ccepting Mason's contention that he is an alien would require finding that he misled the trial court in testifying under oath that he was a citizen"; and

(3) "permitting Mason's claim would unfairly prejudice the government, which would then have to prosecute an eleven-year-old case that was closed nine years ago."

*Id.* In *Prince,* we declared: "Because Prince's claim that it was paid under valid contracts is 'clearly inconsistent' with its implicit earlier position that it accepted the payment in equity, judicial estoppel bars the contrary claim." 892 A.2d at 386 (citation omitted). As we observed, the Contract Appeals Board "could not agree with Prince's position that the District's payment to Prince was contractual in nature 'without undermining the integrity of the judicial process.'" *Id.* (quoting *New Hampshire, supra,* 532 U.S. at 755, 121 S.Ct. 1808). In *New Hampshire,* New Hampshire had taken the position in a 1977 judicial proceeding, "without reservation that the words 'Middle of the River' mean the middle of the Piscataqua River's main channel of navigation," and hence, was "estopped from asserting [in a 2000

judicial proceeding] that the boundary runs along the Maine shore." 532 U.S. at 745, 121 S.Ct. 1808. As its rationale the Court declared: " 'Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.' " *Id.* at 749, 121 S.Ct. 1808 (quoting *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895)).

The factual and procedural context of the case before us is easily distinguished from *Mason, Prince,* and *New Hampshire.* The parties who filed appeals in those cases all were represented by counsel, and two of the cases did not involve criminal matters. The criminal case did not concern a technical procedural issue as to the nature of a collateral motion. Moreover, Mr. Hardy did not take inconsistent substantive positions in judicial proceedings, and he did not mislead the trial court. Furthermore, in disposing of Mr. Hardy's *pro se* 2001 Motion, the judge did not rely on the motion's caption. Rather than treating the motion as one raising ineffective assistance of trial counsel, the court clearly regarded it as a double jeopardy claim due to the alleged merger of two offenses. Although the motions court entered judgment under D.C.Code § 23–110, it treated the motion as one brought under Super. Ct.Crim. R. 35(a) to correct an illegal sentence. Indeed, the motions court specifically referred to Mr. Hardy's "double jeopardy claim" and applied the *Blockburger* test to resolve it on the merits. The court was not obligated to treat the *pro se* 2001 Motion in substance as an ineffective assistance of counsel motion.[15]

15. Rule 12 of the Rules Governing Proceedings under D.C.Code § 23–110 provides:
If no procedure is specifically prescribed by these rules, the Court may proceed in any

lawful manner not inconsistent with these rules, or any applicable statute, and may apply the Superior Court Rules of Criminal Procedure or Rules of Civil Procedure,

Furthermore, permitting Mr. Hardy to proceed with his argument that the 2001 Motion was actually under Rule 35(a) will not unfairly prejudice the government. Unlike the situation in *Mason*, the government would not be forced to prosecute for the first time a decade-old case. Rather than fostering "considerations of equity," *New Hampshire, supra*, 532 U.S. at 755, 121 S.Ct. 1808, application of judicial estoppel to this case would undermine equitable notions. Despite his persistent efforts, Mr. Hardy has never obtained a ruling on the merits of his ineffective assistance of counsel claim. Allowing his 2006 Motion to proceed will not result in an "improper use of judicial machinery." *Id.* at 750, 121 S.Ct. 1808 (citation omitted). Rather it will foster an appropriate use of the judicial process.

*Brown* is directly on point as to whether Mr. Hardy's *pro se* 2001 Motion, which he styled as a § 23–110 motion, procedurally bars his 2006 Motion. In *Brown*, the appellant filed a *pro se* § 23–110 motion, arguing that his crimes merged in violation of the Double Jeopardy Clause and alleging ineffective assistance because his trial attorney failed to raise this claim. 795 A.2d at 59. On appeal, the government contended that the cause-and-prejudice test applied and, because the appellant did not satisfy the test, the court should affirm the denial of his motion without reaching the merits. *Id. Brown* rejected this contention, using language that undoubtedly is applicable to this case:

> At first blush, then, [the appellant's] attempt to assert a double jeopardy claim in his § 23–110 motion appears to be barred because [the appellant] has not proffered cause for his failure to raise the claim in his direct appeal. But [the appellant's] claim that the trial court imposed multiple punishments for a single offense in violation of the Dou-

ble Jeopardy Clause is, in the circumstances here, a claim that his sentence was illegal. As such, it is a claim that properly is made in a motion to correct an illegal sentence pursuant to Super. Ct.Crim. R. 35(a). *See* [ ] *Byrd v. United States*, 500 A.2d 1376, 1378 n. 5 (D.C. 1985), adopted *en banc*, 510 A.2d 1035, 1037 (D.C.1986) (treating collateral attack on concurrent sentences for premeditated murder and felony murder arising from a single homicide as made pursuant to Rule 35(a)).

*Id.* at 60. The court continued, "It is immaterial that [the appellant] did not cite Rule 35(a) in his § 23–110 motion. 'Since we look to the substance of appellant's *pro se* request for collateral relief rather than its form, we will consider appellant's entitlement to relief under Super. Ct.Crim. R. 35(a).'" *Id.* (quoting *Byrd, supra*, 500 A.2d at 1378 n. 5 and citing *Norman v. United States*, 623 A.2d 1165, 1167 (D.C. 1993) ("Appellant's *pro se* [§ 23–110] motion should have been construed by the motions judge as a Rule 35(a) motion.")) (parenthetical alteration in original). The court reached the merits of the motion and affirmed its denial. *Id.* at 60–61.

As in *Brown*, Mr. Hardy's *pro se* 2001 Motion included a reference to § 23–110 in its caption. It claimed an illegal sentence due to the merger of two crimes. It alleged ineffective assistance because trial counsel did not object to the specified convictions or the sentence for both of those convictions. Consistent with *Brown*, then, Mr. Hardy's *pro se* 2001 Motion properly falls under Rule 35(a) since it is a motion to correct an illegal sentence. Because the government's opposition to that motion erroneously treated it as § 23–110 motion, and because the motions judge adopted the government's entire opposition, she improperly concluded that the *pro se* 2001

whichever it deems most appropriate, to     motions filed under these rules.

Motion creates a procedural bar to Mr. Hardy's 2006 Motion.

 In sum, we see no procedural bar to the trial court's consideration of Mr. Hardy's 2006 motion under D.C.Code § 23–110. Furthermore, we cannot characterize his 2006 Motion as containing "vague and conclusory allegations," or "palpably incredible claims," or "allegations that would merit no relief if true." Moreover, this is not an appeal in which Mr. Hardy is attempting "to relitigate issues that the court has previously resolved against him." *Doepel, supra,* 510 A.2d at 1045–46. Indeed, he has never had a decision on the merits of his complaints about trial counsel's performance deficiencies and the alleged resulting prejudice to him. And, based on our review of the record, we are not "satisfied that under no circumstances could [Mr. Hardy] establish facts warranting relief." *Jones, supra,* 918 A.2d at 403 (citing *Newman, supra,* 705 A.2d at 261). Consequently, we are constrained to vacate the order of the motions court denying Mr. Hardy's 2006 Motion, and to remand this case to the trial court with instructions to hold an evidentiary hearing on the merits of Mr. Hardy's motion. *See Lopez v. United States,* 801 A.2d 39, 50 (D.C.2002) ("remand[ing] this case to the trial court for a hearing on [appellant's] D.C.Code § 23–110 motion and a determination as to whether a new trial is required because of ineffective assistance of trial counsel"); *Little, supra,* 748 A.2d at 922 ("there is a presumption in favor of holding a hearing" on a § 23–110 motion) (citing *Ready, supra,* 620 A.2d at 234).

Accordingly, for the foregoing reasons, we vacate the order of the motions court and remand this case to the trial court for an evidentiary hearing and for a determination as to whether a new trial is required because of ineffective assistance of trial counsel.

*So ordered.*